## In re SWEPI L.P. d/b/a Shell Western E & P.

No. 04–02–00057–CV.

Court of Appeals of Texas, San Antonio.

Feb. 5, 2003.

Edmundo O. Ramirez, Ellis, Koeneke & Ramirez, L.L.P., McAllen, James D. Thompson, III, Marie R. Yeates, Gwen Samora, Vinson & Elkins L.L.P., Houston, Lisa E. Bowlin, Sinead O'Carroll, Vinson & Elkins L.L.P., Austin, for Appellant.

Bruce W. Claycombe, Nicole T. Le-Boeuf, Geary, Porter & Donovan, P.C., Addison, J.A. 'Tony' Canales, Canales & Simonson, P.C., Paul F. Simpson, Michael B. Silva, McGinnis, Lochridge & Kilgore, L.L.P., Houston, Patton G. Lochridge, Karen L. Watkins, W. Timothy George, Travis C. Barton, McGinnis, Lochridge & Kilgore, L.L.P., Austin, for Appellee.

Sitting: PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by PAUL W. GREEN, Justice.

In this original proceeding, SWEPI L.P. d/b/a Shell Western E & P (Shell) seeks to overturn the trial court's orders denying Shell's motion for entry onto land for testing and denying Shell's motion to compel responses to interrogatories. Because we hold the trial court abused its discretion in denying the motions, we conditionally grant the writ of mandamus.

### Background and Procedural History

The real parties in interest, Arnoldi Casas, Carolina Casas f/k/a Caroline C. Smith, Ferman Casas, Jr., Juanite P. Casas, Irene Casas, Santas R. Casas, Servando Casas, *et ux*, Yolanda Casas, Johnny Lane, III a/k/a Juan C. Lane, III, Lydia Pena f/k/a Lydia Cantu, Ruben Pulido, *et ux*, and Clementina C. Pulido (the Casas plaintiffs), own property formerly leased by Shell for oil and gas production. Although Shell has gas wells on adjacent

property, Shell never drilled on the Casas property because Shell did not believe there was enough gas to justify the cost. After Shell's lease expired, the Casas plaintiffs leased the same property to Camden Resources, Inc. Camden proceeded to drill a well that is currently producing from the lease. The Casas plaintiffs sued Shell for failing to drill a well on their property, claiming Shell effectively allowed its adjacent wells to drain the reserves of gas under the Casas property. The Casas plaintiffs claim production numbers from the Camden well substantiate their claim.

During the drilling of the Camden well, Camden was required to submit progress reports to the Texas Railroad Commission (RRC), including test results to show the well was being drilled in compliance with state regulations, that is, straight and within the Camden lease rather than into Shell's adjoining lease. Based on those reports, the RRC questioned whether the Camden well was properly vertically drilled and ordered an investigation. In late July 2001, upon hearing about the investigation, Shell requested the RRC to order a directional survey of the Camden well to determine if the well is trespassing on Shell's lease. Shell also requested that the RRC shut-in the Camden well. The RRC refused to shut down the well but gave it a zero production allowance. Although the RRC held a hearing, no decision had issued at the time this proceeding was filed.[1]

As part of its defense, Shell contends the Camden well is likely producing from reserves located under Shell's current lease rather than the Casas property. To support that defense, Shell filed a motion for entry onto Camden's lease to perform two tests on the Camden well, a directional survey and a bottom pressure survey. The Casas plaintiffs and Camden, a non-party to the lawsuit, objected to the motion.

Although the parties disagree on the interpretation of tests conducted to date, all parties' experts agree the only way to know precisely where the Camden well production originates is to perform an accurate directional survey. All the parties appear to agree this test would take about a day but the well would have to be shut-in for that period of time. For the bottom pressure survey, the well would have to be shut-in for several days with resultant loss of production. The parties' experts disagree about the potential for permanent damage to the well from the directional survey and the bottom pressure survey, but it is clear the directional survey is the least invasive of the two tests. Shell offered to file a bond to cover any losses or potential damages.

The trial court denied Shell's motion for entry onto the land for testing. The trial court also denied Shell's motion to compel responses to interrogatories. Shell seeks relief from each of the trial court's rulings in this proceeding.[2]

## Standard for Mandamus Review

■■■ Mandamus issues only to correct a clear abuse of discretion or a violation of a duty imposed by law, and when there is no other adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). The trial court abuses its discretion when it fails to properly apply the law to the undisputed facts, when it acts arbitrarily or unreasonably, or when its ruling is

---

1. The RRC has now issued a decision denying Shell's request for a directional survey.

2. Shell also challenged the trial court's order denying Shell's motion for continuance. We need not address this issue as all parties now concede the matter is moot.

based on factual assertions unsupported by the record. *Microsoft Corp. v. Manning,* 914 S.W.2d 602, 607 (Tex.App.-Texarkana 1995, writ dism'd). Mandamus is appropriate in the discovery context when the trial court denies discovery going to the heart of a party's case. *Able Supply Co. v. Moye,* 898 S.W.2d 766, 772 (Tex.1995) (orig. proceeding) (citing *Walker v. Packer,* 827 S.W.2d at 843). Mandamus will also issue "where a party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error." *Able Supply Co.,* 898 S.W.2d at 772; *Walker,* 827 S.W.2d at 843.

## Discussion

### A. Entry Onto Land For Testing

Texas Rule of Civil Procedure 196.7 governs discovery which must be made by entering onto the land of another to inspect, measure, survey, photograph, test or sample the property or any designated object or operation thereon. TEX.R. CIV. P. 196.7. To enter upon the land of a nonparty, the movant must, no later than 30 days before the end of the discovery period, serve a motion and notice of hearing on all parties and the nonparty owner. TEX.R. CIV. P. 196.7(a), (a)(2). An order for entry onto the property of a nonparty may only issue upon good cause shown and only if the discovery is relevant to the cause of action. TEX.R. CIV. P. 196.7(d).

### 1. Delay in Requesting Discovery

The Casas plaintiffs contend the trial court did not abuse its discretion in denying the testing because Shell waited too long to make its motion for entry and testing. Shell responds that because of

the way the case developed, it pursued its discovery as expeditiously as possible.

Shell sent its first interrogatories to the plaintiffs on June 1, 2001. In early July 2001, Shell first learned of the RRC investigation of the Camden well.[3] In early August 2001, the parties agreed on a discovery schedule setting the deadline for discovery on December 21, 2001, and a trial date of January 22, 2002. The plaintiffs' responses to Shell's interrogatories were due August 13, 2001, but all other discovery was suspended until mid-September. The plaintiffs' responses to discovery revealed they intended to rely on production numbers from the Camden well to support their claim of drainage. On October 30, 2001, plaintiffs produced their first expert reports, again relying on production information from the Camden well.

On November 20, 2001, Shell filed its motion for entry onto land and set it for hearing more than thirty days before the end of the discovery period. The hearing was reset by agreement to a later date, but the deadline for discovery was also extended by agreement to January 11, 2002. Although the hearing on the motion for entry onto land was heard within the extended discovery period, the trial court did not rule until five days before trial.

Shell filed its motion for entry onto land thirty days before the close of discovery under the docket control order in effect at the time the motion was filed. This is within the time limit of Rule 196.7. The discovery deadline was then extended by agreement so that Shell's motion was filed fifty days before the close of discovery. The motion for entry was filed timely and the trial court abused its discretion if it denied the testing based on untimeli-

---

3. In late July, Shell requested the RRC to order a directional survey. The RRC hearing was postponed from August to October 1, and then to November 14, 2001. Shell did not file its motion for entry in the trial court until it was clear the RRC would not issue a ruling in time for Shell to comply with its discovery deadlines.

ness. *See Beamon v. O'Neill,* 865 S.W.2d 583, 585 (Tex.App.-Houston [14th Dist.] 1993, orig. proceeding).[4]

## 2. Relevance

■ To prevail on its motion for entry onto property, Shell must first show that the tests it seeks are relevant. Shell points to the Casas plaintiffs' contention that the Camden well is producing gas from a continuous reservoir that extends under both the Casas property and the adjacent Shell lease. The Casas plaintiffs argue that by not producing from the Casas property, Shell allowed the reservoir to be depleted so that the Camden well is not as productive as if it had been drilled before adjacent wells took most of the production. Shell suggests the Camden well is producing in economically reasonable numbers because the well is drawing from a reservoir under the Shell leases not connected to the smaller, less viable reservoir under the Casas property. All parties agree the only way to know where the bottom of the Camden well is located is by a complete directional survey. Because part of Shell's defense is premised on the location of the well, the directional survey is relevant to Shell's defense.

Similarly, the bottom pressure survey is relevant to Shell's defense. The Casas plaintiffs claim a comparison of the bottom pressure in the Camden well to the initial pressure of Shell's adjacent Kilgore–Warnecke Gas Unit 2 well shows the reservoir beneath the Camden well has been drained. The Casas plaintiffs have a bottom-hole pressure test performed by their own experts but Shell's expert does not believe the test was accurately performed or interpreted. Shell speculates the pressure in the Camden well is probably much higher than the test indicates and wants to do its own testing. Once again, the bottom-pressure survey is relevant to the Casas plaintiffs' claims and to Shell's defense. Shell is not required to base its defense on tests performed only by the plaintiffs' experts, where Shell's experts question both the methodology used and the interpretation of the resultant data.

## 3. Good Cause

■ In addition to showing relevance, Shell must show good cause for the testing. It does not appear any Texas court has directly addressed what constitutes "good cause" for a discovery order allowing entry onto land. Generally, "good cause" for a discovery order is shown where the movant establishes: (1) the discovery sought is relevant and material, that is, the information will in some way aid the movant in the preparation or defense of the case; and (2) the substantial equivalent of the material cannot be obtained through other means. *See State v. Lowry,* 802 S.W.2d 669, 673 (Tex.1991) (holding trial court abused its discretion by not conducting *in camera* examination of confidential documents where insurer showed material could lead to evidence supporting its defense and documents were solely in custody of the State); *Allen v. Humphreys,* 559 S.W.2d 798, 803 (Tex. 1977) (holding trial court abused its discretion where requested discovery was material to issue of causation and was unavailable from other source), *overruled on other grounds, Walker,* 827 S.W.2d at 842; *Bryan v. General Electric Credit Corp.,* 553 S.W.2d 415, 419 (Tex.Civ.App.-Hous-

---

**4.** In a similar argument, Camden calls Shell's delay dilatory. Shell only discovered the possibility the Camden well was trespassing in July and filed its motion for entry four months later, during which period the parties agreed to conduct no discovery for seven weeks, further shortening the discovery window. Under these circumstances, Shell cannot be fairly accused of undue delay.

ton [1st Dist.] 1977, no writ) (requiring a showing of materiality and inability to obtain the information from another source); *Texhoma Stores, Inc. v. American Central Ins. Co.,* 424 S.W.2d 466, 472 (Tex.Civ. App.-Dallas 1968, writ ref'd n.r.e) (holding movant must show discovery sought will aid in the preparation or defense of the case and cannot be obtained without resort to discovery process).[5]

With regard to the directional survey, all parties agree that the bottom location of the well can only be determined by a complete and correct directional survey. The bottom location of the well is clearly relevant to Shell's defense, and because the directional survey is the only way to determine this information, Shell has shown good cause for the directional survey.

The bottom pressure survey is also relevant to Shell's defense. The Casas plaintiffs specifically claim that the difference in pressure between the Camden well and the initial pressure of the adjacent Shell wells shows the Camden well suffered from depletion of the reservoir. The pressure cannot be determined without the test. The Casas plaintiffs argue they have bottom pressure tests that Shell can review for its defense. Shell disputes the accuracy of those tests. Shell was not present when those tests were done to supervise the methods and procedures used. To effectively refute the plaintiffs' tests, Shell is entitled to conduct its own test. We hold Shell has shown good cause

for both the directional survey and the bottom pressure test.[6]

### 4. Least Intrusive Means

Camden argues the tests are too intrusive and could cause irreparable damage to its well. For invasive tests like mental or physical examinations, the courts have required that the testing or examination be the least intrusive means of obtaining the information. *See Coates v. Whittington,* 758 S.W.2d 749, 752 (Tex. 1988, orig. proceeding) (mental exam); *In re Caballero,* 36 S.W.3d 143, 144 (Tex. App.-Corpus Christi 2000, orig. proceeding) (physical exam).

In the case of the Camden well, the sand in which the gas is located also contains water. The longer the well is shut down, the more water accumulates. The accumulated water can reach a point where it permanently interferes with gas production. However, experts on both sides acknowledge that a directional survey is a commonly performed test. It requires the well to be shut-in for little more than a day and is not likely to produce permanent damage. Given this testimony from the experts and the importance of the test to the claims and defenses in the lawsuit, we hold the directional survey is the least intrusive method of obtaining the relevant information.

As to the bottom pressure survey, the experts acknowledge this test is more burdensome than the directional survey, both in terms of time involved and the risk of

**5.** *Allen, Bryan,* and *Texhoma Stores* all interpret former Rule 167 which required a showing of "good cause" for discovery that is now routinely allowed under Tex.R. Civ. P. 192.

**6.** Camden and the Casas plaintiffs argue that because the experts differ as to whether the tests performed to date show the well inclining toward Shell's lease, the trial court could have determined there was no evidence a directional survey is needed. We disagree

with this reasoning. In almost all cases, there will be conflicting evidence and conflicting expert interpretation of that evidence. If the trial court can deny *discovery* on the basis that the parties disagree about what the evidence shows, we will have trial by discovery denial. Accordingly, we are only concerned with whether Shell has shown relevance and good cause for the tests it requests.

permanent damage to the well. However, like the directional survey, a bottom pressure survey is a standard test for wells. Shell has offered to post a bond for the period of time the well will be shut-in and for possible damage to the well. Because the requested test is the only method of obtaining the information sought and the possibility of damages can be mitigated by an adequate bond, we hold the trial court abused its discretion in denying Shell's motion for entry onto land to perform the bottom pressure survey.

#### 5. Unduly Burdensome or Harassing

■ Camden argues the trial court could have found the requested tests unduly burdensome. The trial court must consider the burden or expense of the discovery compared to its likely benefit, taking into account:

(1) the needs of the case,

(2) the amount in controversy,

(3) the parties' resources,

(4) the importance of the issues at stake in the litigation, and

(5) the importance of the proposed discovery in resolving the issues.

TEX.R. CIV. P. 192.4(b).

These factors have already been discussed in terms of the claim that the tests are too intrusive. Although both tests involve some risk, both go directly to the issues in the lawsuit. The cost of the testing, as well as the cost of shutting in the well and the risk of damage, can be allocated to Shell. Thus, the trial court should not have denied discovery on the ground that the tests are too burdensome.

Camden and the Casas plaintiffs also complain the request for testing is harassing because Shell has made the same request in three other forums. However, Shell has not asked for information it already possesses. It has asked for tests directly related to issues in this lawsuit.

The fact that similar requests may have been denied in other lawsuits does not prohibit proper discovery from proceeding in this lawsuit. Further, the denial of Shell's motion for temporary injunction in another lawsuit does not limit the discovery allowed in this lawsuit. *See Dallas Gen. Drivers, Warehousemen & Helpers Local Union No. 745 v. Vilbig Bros., Inc.,* 225 S.W.2d 617, 620 (Tex.Civ.App.-Dallas 1949, writ ref'd n.r.e.). There has been no final determination of issues that would foreclose discovery on these particular claims. We overrule the objection that the motion for entry is unduly burdensome or harassing.

#### 6. Expert Reliability

■ Camden argues Shell failed to show good cause for the tests because the opinion of Shell's expert is unreliable. Camden cross-examined the expert at the RRC hearing but at no time did Camden ask the trial court to disqualify the expert or his findings on the basis of a *Robinson/ Daubert* challenge. Camden may not assert a *Robinson* challenge in this mandamus action when the trial court has not been asked to consider the issue. *See General Motors Corp. v. Sanchez,* 997 S.W.2d 584, 590–91 (Tex.1999).

#### 7. Lack of Remedy by

■ In yet another argument, Camden contends that Shell is not prevented from making a defense if it does not get the requested tests, thus Shell has an adequate remedy by appeal, and mandamus is not appropriate. Camden says Shell's defense might not be as complete or as convincing, but because Shell already has information showing the Camden well tends to drift toward its lease, Shell can try to refute the bottom pressure survey information by impeaching the method of testing and the accuracy of the interpreta-

tion. In other words, Camden says Shell is not necessarily entitled to the best discovery so long as Shell can still make its defense.[7] We disagree.

> Affording parties full discovery promotes the fair resolution of disputes by the judiciary. This court has vigorously sought to ensure that lawsuits are 'decided by what the facts reveal, not by what facts are concealed.' Discovery is thus the linchpin of the search for truth, as it makes 'a trial less of a game of blind man's bluff and more a fair contest with the issues and facts disclosed to the fullest practicable extent.' ... Only in certain narrow circumstances is it appropriate to obstruct the search for the truth by denying discovery.

*Lowry,* 802 S.W.2d at 671.

A showing of "good cause" is a showing that the movant's defense will be compromised by the denial of discovery. With few exceptions, once the movant has established "good cause," the trial court abuses its discretion by not ordering the requested discovery. *See Lowry,* 802 S.W.2d at 673 (granting writ of mandamus upon showing of good cause for the denied discovery). Without the test results sought here, both parties must prepare alternative claims and defenses. It is a great waste of judicial resources to proceed to trial absent a test that could narrow the issues to be resolved. *See Walker,* 827 S.W.2d at 843. Additionally, it is impossible for Shell to preserve its issues for appeal because it is impossible to know what the outcome of the tests will be. Accordingly, mandamus relief is appropriate to challenge the trial court's denial of the motion for entry onto property.

### 8. *Railroad Commission Primary Jurisdiction*

Camden argues the RRC has primary jurisdiction over regulation of oil and gas drilling; therefore, the trial court did not abuse its discretion if it deferred to the RRC to determine whether a directional survey was warranted. When a trial court defers to an agency for preliminary review of matters within the agency's jurisdiction, the case is abated pending the agency's ruling. *See Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 208 (Tex.2002). In this case, the trial court ordered Shell to trial without the requested ruling from the RRC; therefore, it is clear the trial court did not defer to the RRC for a preliminary ruling.

However, because the question of primary jurisdiction remains an issue, we address whether the trial court should have deferred to the RRC in this matter. *See id.* Where an agency has specialized knowledge, the court may defer to the agency's expertise and responsibility to develop regulatory policy. *Id.; Cash Am. Int'l Inc. v. Bennett,* 35 S.W.3d 12, 18 (Tex.2000). The doctrine of primary jurisdiction is based on two policies: "(1) an agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from an agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations." *Butnaru,* 84 S.W.3d at 208. Thus courts should defer to the agency if: (1) a claim involves issues within the agency's special competence, or (2) uniform ruling is essential to carry out the agency's regulatory scheme. *Cash Am. Int'l Inc.,* 35 S.W.3d at 18. Where the agency has jurisdiction to make an initial finding, but not to grant relief, the litigation should be

---

**7.** The Dallas Court of Appeals rejected a similar argument in *In re Kaip,* 1998 WL 909467, at *3 (Tex.App.-Dallas 1998, orig. proceeding) (not designated for publication).

abated to allow the agency to rule. *See Butnaru*, 84 S.W.3d at 208; *Lake Country Estates, Inc. v. Toman*, 624 S.W.2d 677, 681–82 (Tex.App.-Fort Worth 1981, writ ref'd n.r.e.); *Penny v. Southwestern Bell Telephone Co.*, 906 F.2d 183, 188–89 (5th Cir.1990). The court may then consider the case, giving appropriate regard to the agency's determination, whatever it might be. *Butnaru*, 84 S.W.3d at 208.

The RRC has regulatory power over the drilling of gas wells and may order testing as necessary to determine compliance with state rules. Tex. Nat. Res.Code Ann. §§ 81.051, *et. seq.* (Vernon 2001); 16 Tex. Admin. Code § 3.11 (2001) (Tex.R.R. Comm'n, Inclination and Directional Surveys Required). The RRC has expertise in this area as evidenced by the regulations allowing the RRC to order a survey upon request from a party or on its own authority and a finding of probable cause to believe the well was not drilled in accordance with RRC Rule 11. 16 Tex. Admin. Code § 3.11(e).

However, by declining to order further testing, the RRC can only determine that it will not continue to pursue a claim of statutory violation. It cannot make a determination that a well is not trespassing, a defense the jury must evaluate in this case. *See L & G Oil Co. v. Railroad Commission*, 368 S.W.2d 187, 191 (Tex. 1963) (for private recovery, litigant must resort to courts); *Hastings Oil Co. v. Texas Co.*, 149 Tex. 416, 234 S.W.2d 389, 396 (1950) (directional survey warranted to de-termine whether trespass occurred). Indeed, the RRC rules make clear that nothing in the rules is intended to allow a well to trespass. *See* 16 Tex. Admin. Code § 3.11(a); *Amarillo Oil Co. v. Energy–Agri Prods., Inc.*, 794 S.W.2d 20, 25 (Tex. 1990) (RRC's primary jurisdiction not so broad as to oust courts of jurisdiction).[8]

Additionally, the RRC requires a finding of probable cause to order a directional survey. 16 Tex. Admin. Code § 3.11(e)(1). In contrast, a party seeking entry onto land for testing need only show "good cause." We decline to engraft a higher standard onto the discovery rules.

In conclusion, we hold the trial court abused its discretion by denying Shell's motion for entry onto the Camden lease to perform a directional survey and a bottom pressure test.

**B. Motion to Compel Responses to Interrogatories**

In its second issue, Shell complains the trial court abused its discretion by denying Shell's motion to compel the Casas plaintiffs' responses to interrogatories. Although Shell complains about the lack of responses from all plaintiffs, only the responses of plaintiff Arnoldi Casas (Casas) are provided in the record. Accordingly, our review is limited to those interrogatories and answers. *See Walker v. Packer*, 827 S.W.2d 833, 837 (Tex.1992).

Shell sent nineteen interrogatories to Casas on June 1, 2002. Casas responded over sixty days later with multiple broad

---

**8.** The Texarkana court of appeals has held the trial court may not render a decision that amounts to a collateral attack on a RRC ruling. *Arkla Exploration Co. v. Haywood, Rice & William Venture*, 863 S.W.2d 112, 118–19 (Tex.App.-Texarkana 1993, writ dism'd by agrmt) (RRC's finding that defendant did not violate RRC rules by producing from unauthorized location covered all allegations made by plaintiffs and was not subject to collateral attack). That is not the circumstance in this case. If the RRC had ordered a directional survey and thereafter issued an opinion that the Camden well was not bottomed on Shell's lease, that decision might be determinative of the issue in the lawsuit. However, here the RRC's decision is nothing more than an additional expert opinion based on the incomplete data available at this time.

objections and very little substantive information. Casas also objected that counting subparts, there are ninety-eight questions; therefore, he was not required to respond beyond interrogatory number 5.

■ Rule 190.3 limits the parties in this case to no more than twenty five interrogatories. TEX.R. CIV. P. 190.3(b)(3). Although each discrete subpart of an interrogatory is counted as a separate question, "not every separate factual inquiry is a discrete subpart." TEX.R. CIV. P. 190, cmt. 3; *see also Braden v. Downey*, 811 S.W.2d 922, 927–28 (Tex.1991). A "discrete subpart" is one that calls for information that is not logically or factually related to the primary interrogatory. TEX.R. CIV. P. 190, cmt. 3.

A review of the interrogatories reveals none that have multiple "discrete subparts." Each question relates to a particular claim and asks Casas to provide certain details about the facts underlying that claim. The "subparts" objected to by Casas simply identify the types of facts Shell would like to have disclosed so that it can understand the parameters of the claims and prepare its defenses. Accordingly, we hold the interrogatories do not exceed the number allowed by Rule 190.3(b)(3) and overrule Casas's objections on that ground.

Next we address Casas's individual objections and answers to interrogatories 3 through 5, 13, and 14.[9] In each of the disputed interrogatories, Shell asked for information directly related to the Casas plaintiffs' claims; i.e., whether plaintiffs claimed Shell should have drilled offset wells; what well the plaintiffs claim wrongfully drained their lease; the type and location of development wells Shell should have drilled; when the plaintiffs first discovered their claims; and the identity and amounts of damages claimed. For each of these questions, Casas made a series of almost identical objections. We overrule each of these objections for the following reasons:[10]

1. Without explanation, Casas objects that the questions exceed the scope of discovery. It appears each question is reasonably related to a claim made in the plaintiffs' petition; therefore, each is reasonably calculated to lead to the discovery of admissible evidence.

2. Casas objects the requests are overbroad, irrelevant, and not limited in time. Each interrogatory asks about the Casas plaintiffs' claims; therefore, by the scope of the question, the information sought is limited to the claims in this lawsuit and the period of time during which the plaintiffs claim Shell failed in its responsibilities under the leases.

3. Casas objects that much of the information can be obtained from a more convenient or less costly source. He does not identify that source. The interrogatories seek facts that the plaintiffs claim support their causes of action, facts that plaintiffs are obligated to reveal.

9. In its motion to compel, Shell specifically addressed interrogatories 2 through 10, 13, and 14. In its brief on appeal, Shell addresses only interrogatories 3 through 5, 13, and 14. Although it appears Shell intended to challenge Casas's objections to all the interrogatories, our review is limited to those points presented in this appeal.

10. The order of the trial court implies that the motion to compel was not denied on its merits but because of the impending trial date. We note the trial court indicated it would reconsider its ruling if the case did not proceed to trial on the scheduled date. We are confident the trial court will reconsider those responses we have not addressed in light of the rulings in this opinion.

4. Casas complains the interrogatories require the plaintiffs to marshal all their proof or all the proof they intend to present at trial. We disagree with this interpretation of the questions. The interrogatories seek the facts underlying the plaintiffs' claims. This is the very purpose of discovery. Casas cannot avoid providing facts by assuming Shell is asking for more than the rules allow.

5. Casas objects that the definition of "you," "your," "plaintiff," and "plaintiffs" is overbroad. However, he states his answer is "made solely on his behalf." The definition of terms is somewhat confusing. However, it does not appear that Shell intended Casas to provide an answer that would include all the plaintiffs. Casas should have at least provided answers within his own knowledge.

6. Casas also objects that the terms "offset well" and "wrongfully drained" are not defined. Although sometimes the lack of a definition can render an interrogatory objectionably vague, that is not the case here. It is the plaintiffs who have claimed Shell failed to drill (offset) wells to protect their lease from waste (being wrongfully drained). The terms Shell has used to describe these claims are easily defined in the context of the lawsuit.

■■■■ With regard to Casas's answers, in response to four of the five interrogatories, Casas answered only that he had no personal knowledge and deferred to the expert reports. At the hearing, Casas' counsel argued that his clients should not have to swear to answers that are based on expert testimony. The discovery rules specifically allow a party to state when facts in his or her answer are derived from some other source, such as an expert or another witness. *See* Tex. R. Civ. P. 197.2(d). This obviates the need for parties to verify under oath facts upon which they may rely for support of their claims, but that were acquired from a hearsay source. *See id.; see also* Tex.R. Civ. P. 191.3(c) (signature is based on knowledge, information and belief following a reasonable inquiry). The party must still reveal the factual basis of the claims or defense, regardless of how those facts may ultimately be proved at trial. *See Able Supply Co.,* 898 S.W.2d at 771 (plaintiffs have affirmative obligations to respond to discovery).

■■■ Finally, in response to the interrogatory seeking information about when the plaintiffs discovered their claim, Casas answered only that some plaintiffs contacted counsel in 2000. The interrogatory seeks the facts which prompted that meeting, what facts were revealed by further investigation, and when Casas came into possession of these facts. The inquiry is reasonable and within the scope of discovery.

We hold Casas's answers to interrogatories 3, 4, 5, 13, and 14 are inadequate. Because we overrule Casas's objections and hold his answers are inadequate, it was an abuse of discretion for the trial court to deny Shell's motion to compel answers to interrogatories in its entirety. We conditionally grant mandamus as to the motion to compel.

### Conclusion

We hold the trial court abused its discretion in denying Shell's motion for entry onto land for the purpose of conducting a directional survey and a bottom hole pressure test. We hold the trial court further abused its discretion in denying Shell's motion to compel as to interrogatories 3, 4, 5, 13, and 14. Accordingly, we conditionally grant the writ of mandamus as to the

trial court's Order Denying Motion for Entry on Property of Nonparty entered January 17, 2002, and the trial court's Order Denying Shell Defendants' Motion to Compel entered December 28, 2001. We are confident that the trial court will vacate its orders and make further rulings consistent with this opinion. If it does not, we will issue the writ.