**SWEPI, L.P. (d/b/a Shell Western E & P), KLT, Inc. and KLT Gas, Inc., Appellants,**

v.

**CAMDEN RESOURCES, INC., Appellee.**

No. 04–03–00067–CV.

Court of Appeals of Texas, San Antonio.

April 14, 2004.

Rehearing Overruled June 1, 2004.

James D. Thompson, III, Benjamin Elmore, Gwen Samora, Mark C. Rodriguez,

Vinson & Elkins, L.L.P., Houston, Sinead O'Carroll, Vinson & Elkins, L.L.P., Austin, Edmundo O. Ramirez, Ellis, Koeneke & Ramirez, L.L.P., McAllen, F. Franklin Honea, Law Office of F. Franklin Honea, Dallas, for appellants.

Bruce W. Claycombe, Peter D. King, Ronald D. Gray, Geary, Porter & Donovan, P.C., Addison, J. Woodfin Jones, Alexander Dubose Jones & Townsend LLP, Richard P. Marshall, Jr., Scott, Douglas & McConnico, L.L.P., Austin, David D. Towler, San Diego, David F. Johnson, Winstead Sechrest & Minick, P.C., Dallas, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice and PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

SWEPI, L.P. d/b/a Shell Western E & P ("SWEPI"), and KLT, Inc. and KLT Gas, den Resources, Inc. ("Camden"). We reverse the judgment of the trial court and remand for further proceedings.

### BACKGROUND AND PROCEDURAL HISTORY

This case arises out of a dispute regarding the placement and drilling of a well on property formerly leased by the Casas family to SWEPI for oil and gas production (the "Casas Tract"). Although SWEPI has gas wells on the adjacent property, it never drilled on the Casas Tract because it did not believe there was

sufficient gas to justify the cost. After SWEPI's lease expired, the Casas family leased the property to Camden. In April 2001, Camden drilled a producing gas well, the Casas Well No. 1, close to the lease line of the adjacent property leased by SWEPI. The Casas family sued SWEPI (the "Casas suit") for failing to drill on the Casas Tract, claiming that SWEPI allowed its adjacent wells to drain the gas reserves from underneath the Casas Tract.

 SWEPI asserted in defense that the Casas Well No. 1 is not drilled vertically, but deviates into the adjacent tract leased by SWEPI and is producing gas from that reservoir rather than from the reservoir beneath the Casas Tract. In July 2001, the Texas Railroad Commission ("RRC") initiated an investigation to determine whether the Casas Well No. 1 is vertically drilled in compliance with its statewide Rules 11 and 37 which regulate the drilling and spacing of oil and gas wells. SWEPI filed an independent complaint with the RRC requesting that the Casas Well No. 1 be shut in and a directional survey be ordered under Rule 11 to determine the well's bottom hole location. On October 1, 2001, SWEPI instituted this suit against Camden (the "Camden suit") alleging sub-surface trespass and conversion by the Casas Well No. 1. KLT, which has a 50% working interest in SWEPI's lease adjacent to the Casas Tract, also sued Camden for sub-surface trespass and conversion, in addition to illegal production, fraudulently obtaining a production allowable from the RRC, misappropriation of trade secrets and unfair competition. KLT's suit against Camden was ultimately transferred and consolidated with SWEPI's suit.[1]

---

1. On appeal, KLT asks this Court to reverse the order transferring venue of its action from Dallas County to Duval County, Texas. Venue over claims based on ownership rights to

oil and gas in place, which constitutes real property, is mandatory in the county where the land is located. See Tex. Civ. Prac. & Rem.Code Ann. § 15.011(Vernon 2002); see

In support of its defense against the Casas's claims for drainage and in support of its own trespass and conversion claims against Camden, SWEPI filed a discovery motion in each suit requesting entry onto the Casas Tract to perform a directional survey and a bottom pressure test to determine precisely where the Casas Well No. 1's production originates.[2] Camden and the Casas family objected to SWEPI's request to conduct the tests, arguing that a partial directional survey had already been done and the cost of shutting in the well to conduct the additional tests was unnecessary and unduly burdensome. After a hearing on January 7, 2002, the trial court denied SWEPI's request for the tests in the Casas suit, and held the discovery request in abeyance in the Camden suit.

SWEPI sought mandamus relief from this Court in the Casas suit. While SWEPI's petition for mandamus was pending, the RRC issued an order on May 9, 2002. Based on the information submitted by Camden,[3] the RRC found that the Casas Well No. 1 was drilled in compliance with statewide Rules 11 and 37. The RRC denied SWEPI's request for a directional survey under Rule 11, finding that SWEPI had failed to show "probable cause to suspect" the well was not bottomed within its lease boundaries. Based on the RRC's ruling, Camden moved for summary judg-

ment on the trespass and conversion claims asserted by SWEPI and KLT, arguing their claims were now barred by collateral estoppel, res judicata and the rule of capture. After a hearing on Camden's summary judgment motion on October 24, 2002, the trial court granted summary judgment against SWEPI and KLT on all of their claims, excluding KLT's trade secret and unfair competition claims. The trial court signed the order granting summary judgment in the Camden suit on October 30, 2002.

On February 5, 2003, this Court issued its opinion in the mandamus proceeding in the Casas suit, holding that SWEPI was entitled to conduct a directional survey and bottom pressure test on the Casas Well No. 1. *See In re SWEPI, L.P.*, 103 S.W.3d 578, 588 (Tex.App.-San Antonio 2003, orig. proceeding) (finding SWEPI's discovery request was timely, and the tests were relevant, based on good cause and not unduly burdensome). We acknowledged the RRC's order, but held that the RRC findings were not binding on the trial court and were not preclusive of the trespass and conversion claims. *Id.* On February 14, 2003, without ordering the requested directional survey, the trial court proceeded to enter a final judgment granting Camden's motion for summary judgment against SWEPI and KLT in the Camden suit.[4] SWEPI filed a motion for

---

also *Madera Production Co. v. Atlantic Richfield Co.*, 107 S.W.3d 652, 660 (Tex.App.-Texarkana 2003, pet. denied in part, dism'd in part); *Renwar Oil Corp. v. Lancaster*, 154 Tex. 311, 276 S.W.2d 774, 775–76 (1955). KLT's action for sub-surface trespass and conversion is essentially a suit for recovery of land, and venue is mandatory in Duval County where the minerals are located. *See Kilgore v. Black Stone Oil Co.*, 15 S.W.3d 666, 670 (Tex.App.-Beaumont 2000, pet. denied).

2. KLT also filed a similar discovery request in the Camden suit.

3. The RRC order was based on Camden's partial directional survey and the Form W–12 inclination report filed by Camden upon completion of the well, which together showed the well had a maximum accumulative displacement of 467 feet, which was less than the 473 foot distance from the well's surface location to the nearest lease line.

4. KLT dismissed its remaining claims so that the summary judgment order signed October 30, 2002, could become a final judgment subject to appeal.

new trial asserting that our opinion in *SWEPI* was dispositive of Camden's summary judgment motion and SWEPI's discovery request in the Camden suit.[5] The trial court declined to hold a hearing, and the motion was overruled by operation of law. On appeal, SWEPI and KLT ask this Court to reverse the summary judgment and remand for trial on their trespass and conversion claims against Camden.[6]

### SUMMARY JUDGMENT

▮ We review the grant of a summary judgment *de novo*. *Ingalls v. Standard Gypsum, L.L.C.*, 70 S.W.3d 252, 255 (Tex. App.-San Antonio 2001, pet. denied). We will affirm a summary judgment only if the record establishes there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law on a ground set forth in its motion. TEX.R. CIV. P. 166a(c); *see Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Issues not expressly presented to the trial court by written motion, answer or other response may not be considered on appeal as grounds for reversal.[7] TEX.R. CIV. P. 166a(c); *see McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d

337, 339 (Tex.1993). If the movant relies on an affirmative defense as the basis for summary judgment, he must conclusively prove each element of the affirmative defense as a matter of law. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972); *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 927 (Tex.1996).

The plaintiff may defeat a defendant's summary judgment motion by presenting evidence that raises a fact question on at least one element of each affirmative defense. *Torres v. Western Casualty & Surety Co.*, 457 S.W.2d 50, 52 (Tex.1970). In determining whether there is a disputed issue of material fact precluding summary judgment, we must accept as true all evidence in favor of the non-movant and indulge all reasonable inferences in the non-movant's favor. *Nixon*, 690 S.W.2d at 549; *see also American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). If the order is general and does not specify the grounds on which the trial court granted summary judgment, on appeal the non-movant must negate any grounds on which the court could have granted the summary judgment. *Basse Truck Line, Inc. v. First*

---

5. SWEPI and KLT also appeal the trial court's denial of their discovery request for a directional survey; however, the parties submitted supplemental briefs indicating that the trial court granted SWEPI's request for the directional survey in the Casas lawsuit on August 6, 2003, and the survey was completed by SWEPI on September 4, 2003. Accordingly, SWEPI's discovery request before this Court is moot and we need not address the issue.

6. References in this opinion to the "trespass and conversion claims" asserted by SWEPI and KLT also include the related claims for illegal production and fraudulently obtaining a production allowable asserted by KLT.

7. Camden argues that the new directional surveys have rendered all issues in this appeal moot. The results of SWEPI's directional

survey conducted on September 4, 2003, as well as the results of the directional survey independently conducted by Camden, were not before the trial court at the time the summary judgment was granted and are not part of the appellate record. This court stated in an order issued February 25, 2004, that it must determine the issues on appeal based solely on the record as it existed at the time the summary judgment was granted; therefore, we have not considered the new survey results in determining whether the trial court erred in granting summary judgment for Camden. *See Sabine Offshore Service v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979); *see also Myer v. Cuevas*, 119 S.W.3d 830, 836 (Tex.App.-San Antonio 2003, no pet.).

*State Bank,* 949 S.W.2d 17, 19 (Tex.App.-San Antonio 1997, writ denied).

### ANALYSIS

As the grounds for its summary judgment motion, Camden asserted the affirmative defenses of collateral estoppel and res judicata [8] premised on the RRC's finding that the Casas Well No. 1 was drilled in compliance with its statewide Rules 11 and 37.[9] Camden maintained that because the RRC has primary jurisdiction over whether a well complies with its rules, the RRC's order operated as a final adjudication of the factual issues underlying the trespass and conversion claims brought by SWEPI and KLT; thus, any attempt to re-litigate those issues and claims was barred by collateral estoppel. Camden asserted that the trespass and conversion claims must fail as a matter of law because the RRC found "no probable cause to suspect" the well was not bottomed on the Casas lease, and that the well was drilled in compliance with the RRC's spacing and vertical drilling rules; therefore, the only way for SWEPI and KLT to prevail on their trespass and conversion claims was by proving facts opposite to those already found by the RRC. In addition, Camden asserted that under the rule of capture it was entitled to all production from the legally drilled well regardless of the source of the oil and gas.

### 1. Collateral Estoppel

The doctrine of collateral estoppel, or issue preclusion, is designed to promote judicial efficiency, protect parties from multiple lawsuits and prevent inconsistent judgments by precluding relitigation of issues. *Sysco Food Services, Inc. v. Trapnell,* 890 S.W.2d 796, 801 (Tex.1994). As an affirmative defense, collateral estoppel must be pled by the party asserting it. TEX.R. CIV. P. 94. A party asserting collateral estoppel must establish that the facts to be litigated in the second action were (1) fully and fairly litigated in the first action, (2) essential to the judgment in the first action, and (3) the parties were cast as adversaries in the first action. *Trapnell,* 890 S.W.2d at 801; *see also Parker v. State Farm Mut. Auto. Ins. Co.,* 83 S.W.3d 179, 182 (Tex.App.-San Antonio 2002, no pet.). When a defendant moves for summary judgment on the basis of collateral estoppel as an affirmative defense, he must conclusively prove each element. *Avila v. St. Luke's Lutheran Hospital,* 948 S.W.2d 841, 847 (Tex.App.-San Antonio 1997, pet. denied). To invoke collateral estoppel on the basis of a prior administrative order, the party must show that the administrative agency was "acting in a judicial capacity and resolve[d] disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *Turnage v. JPI Multifamily Inc.,* 64 S.W.3d 614, 620 (Tex.App.-Houston [1st Dist.] 2001, no pet.).

First we must determine the capacity in which the RRC was acting. The

---

**8.** Camden concedes on appeal that even though it raised res judicata in its summary judgment motion, res judicata is not applicable because the RRC did not adjudicate SWEPI's and KLT's trespass and conversion claims. We agree. Therefore, we need not address res judicata as a basis for the summary judgment.

**9.** The Texas Railroad Commission's Rule 11 requires all oil and gas wells to be drilled as close to vertical as possible by normal, prudent, practical drilling operations. 16 TEX. ADMIN. CODE § 3.11 (2001) (Tex.R.R. Comm'n, Inclination and Directional Surveys Required). The Commission's Rule 37 regulates the spacing between wells on a lease and between wells and the adjacent lease lines. 16 TEX. ADMIN. CODE § 3.37 (2001) (Tex.R.R. Comm'n, Statewide Spacing Rule).

RRC has been vested with primary jurisdiction over oil and gas matters regulating drilling and production. It has the power and duty to regulate the production of oil and gas for the prevention of waste and the protection of correlative rights of producers. *See* Tex. Nat. Res.Code Ann. § 85.058 (Vernon 2001); *see also Texaco, Inc. v. Railroad Comm'n*, 583 S.W.2d 307, 310 (Tex.1979). Even though the RRC has primary jurisdiction over matters concerning the production of oil and gas, it is well established that the RRC does not have jurisdiction over inherently judicial actions such as those for trespass and conversion. *See Amarillo Oil Co. v. Energy–Agri Products, Inc.*, 794 S.W.2d 20, 25–26 (Tex.1990) (rejecting argument that party's judicial action for trespass was impermissible collateral attack on RRC findings).

The RRC could not decide the question of sub-surface trespass and ownership of the gas produced because it did not have jurisdiction to determine such property rights. The primary thrust of the claims asserted by SWEPI and KLT is to establish their ownership of and title to the gas underlying their lease, and to recover the value of the gas allegedly converted by Camden through a sub-surface trespass. These claims involve property rights which are not within the RRC's jurisdiction to determine, and are properly brought in a judicial action. *See Amarillo Oil*, 794 S.W.2d at 26 (courts have jurisdiction over suits involving title and property rights notwithstanding the primary jurisdiction doctrine); *see also Dorchester Gas Producing Co. v. Harlow Corp.*, 743 S.W.2d 243, 252 (Tex.App.-Amarillo 1987, writ denied) (conversion claim for value of gas illegally produced and sold is an action involving property rights within the trial court's jurisdiction, and does not constitute an impermissible collateral attack on RRC findings). Accordingly, the RRC did not

have the authority to resolve the ultimate issue of whether Camden committed subsurface trespass and conversion. We must next determine what issue, if any, the RRC did decide.

 Collateral estoppel extends only to those issues of fact or law that were expressly or necessarily determined in the prior action; it does not extend to those matters which might have been, but were not, raised and adjudicated in the first action. *Avila*, 948 S.W.2d at 847; *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984). The issue decided in a prior action must be identical to the issue in the pending action. *Getty Oil Co. v. Ins. Co. of North America*, 845 S.W.2d 794, 802 (Tex.1992) (even though the current action arose from the same transaction as the former action, the same legal issue was not involved). The issue must have been actually resolved by the administrative agency for its findings to have any preclusive effect. *See Turnage*, 64 S.W.3d at 620. Once an issue has been actually litigated, that issue is conclusive in a subsequent action between the same parties. *Avila*, 948 S.W.2d at 847. Here, however, the RRC did not decide the disputed fact issue on which the trespass and conversion claims are based.

 The RRC did not actually determine that the Casas well bore did not cross or come too close to SWEPI's lease line, which is the ultimate fact issue underlying the trespass and conversion claims. The RRC only decided, based on the limited information available to it at the time, that SWEPI had failed to show "probable cause to suspect" the well was not bottomed within the Casas lease sufficient to require a directional survey under the "probable cause" standard stated in its Rule 11. Thus, even if the RRC's findings were to be given preclusive effect in the

trial court, the RRC did not determine the ultimate fact question in issue; it merely determined that SWEPI failed to prove it was entitled to the directional survey under the elevated standard of proof set forth in Rule 11.[10] Further, even though the RRC made the statement that the Casas Well No. 1 was in compliance with Rules 11 and 37, that finding of regulatory compliance was based on incomplete data and did not necessarily determine whether the well was trespassing or converting gas from beneath SWEPI's lease.

In support of its argument that the judicial trespass and conversion action is an impermissible collateral attack on the RRC findings, and is thus barred by collateral estoppel, Camden relies primarily on *Arkla Exploration Co. v. Haywood, Rice & William Venture,* 863 S.W.2d 112 (Tex.App.-Texarkana 1993, writ dism'd by agr.). *Arkla* states the general rule that RRC orders issued within its delegated authority are immune from collateral attack unless void on their face. *Id.* at 116. However, *Arkla* is distinguishable from the instant case because in *Arkla* the RRC actually made findings which encompassed all of the plaintiffs' allegations in the judicial action; thus, the RRC findings were not subject to collateral attack. *See id.* at 117. This Court has already distinguished *Arkla* from the current case, stating in *SWEPI,* "[i]f the RRC had ordered a directional survey and thereafter issued an opinion that the Camden well was not bottomed on Shell's lease, that decision might be determinative of the issue in the lawsuit. However, here the RRC's decision is nothing more than an additional expert opinion based on the incomplete data available at this time." *SWEPI,* 103 S.W.3d at 588 n. 8 (citing *Amarillo Oil,* 794 S.W.2d at 26). The RRC did not actually resolve the ultimate fact issue underlying SWEPI's and KLT's trespass and conversion claims; thus, there is no collateral estoppel bar in the judicial action.

In summary, Camden has failed to establish all the elements of collateral estoppel based on the RRC findings because the RRC did not have jurisdiction to make, and did not actually make, a full and final adjudication of the disputed fact issues underlying the trespass and conversion claims alleged by SWEPI and KLT. We find the trial court erred in finding that Camden conclusively established each element of collateral estoppel based on the RRC order, and therefore erred in granting summary judgment on the basis of collateral estoppel.[11]

### 2. Rule of Capture

█ As an additional ground for summary judgment, Camden argued that because the RRC's order found the Casas well in compliance with its rules and assigned it an allowable, it is legally entitled to all of the production from the well,

---

**10.** There is a distinct difference between the burdens of proof applicable in the RRC administrative proceeding and the judicial action on the ultimate question of fact, *i.e.,* whether the Casas well bore crosses or comes too close to the SWEPI lease line. Even where the identical issue has been actually litigated and determined by a valid and final judgment, relitigation of the issue is not barred when the party against whom preclusion is sought had a significantly heavier burden of persuasion in the initial action than in the subsequent action. *See Trapnell,* 890

S.W.2d at 802 (citing Restatement (Second) of Judgments §§ 28(4), 29 (1982)); *see also Scurlock Oil Co. v. Smithwick,* 724 S.W.2d 1, 7 (Tex.1986).

**11.** In view of our conclusion that Camden failed to establish the elements of collateral estoppel, we need not reach the question of whether KLT was in privity with a party to the RRC proceeding. *See Amstadt v. United States Brass Corp.,* 919 S.W.2d 644, 653 (Tex. 1996).

including any oil and gas that flows from underneath adjacent leases based on the rule of capture. The "rule of capture" is a well established doctrine in Texas which holds that a landowner is entitled to produce the oil and gas in place beneath his land, as well as the oil and gas which flows to the land as the result of physical conditions and natural laws relating to the migratory nature of oil and gas. *Halbouty v. Railroad Comm'n,* 163 Tex. 417, 357 S.W.2d 364, 374–75 (1962); *see also Railroad Comm'n v. Magnolia Petroleum Co.,* 169 S.W.2d 253, 255 (Tex.Civ.App.-Austin 1943, no writ) (gas in a continuous reservoir will naturally flow to the point of low pressure). Recognizing that oil and gas are fugitive minerals that will migrate throughout a reservoir without regard to property lines, the rule of capture provides that a landowner owns all the oil and gas produced by a legally drilled well located on his land, even though the well may be draining minerals from nearby properties. *See Browning Oil Co., Inc. v. Luecke,* 38 S.W.3d 625, 645 (Tex.App.-Austin 2000, pet. denied) (holding that in the case of a vertically drilled well, the rule of capture may support the theory that the landowner is entitled to royalties for all production if the well bore is located on the landowner's tract).

 Camden's rule of capture argument is premised on the preclusive effect of the RRC's finding that the well was drilled in compliance with Rules 11 and 37. The RRC's Rule 11 itself makes clear, however, that nothing in the RRC's rules is intended to permit a well to trespass. Rule 11(a) states, "[a]ll wells shall be drilled as nearly vertical as possible by normal, prudent, practical drilling operations. Nothing in this section shall be construed to permit the drilling of any well in such a manner that the wellbore crosses lease and/or property lines ... without

special permission." 16 TEX. ADMIN. CODE § 3.11(a). Moreover, the Texas Supreme Court has expressly held that the rule of capture is not a limitation on the common law cause of action for trespass. *See Elliff v. Texon Drilling Co.,* 146 Tex. 575, 210 S.W.2d 558, 561 (1948). A landowner has absolute title to the oil and gas under his land and is accorded the usual remedies against trespassers who appropriate the minerals or destroy their market value. The common law of trespass and other wrongful conduct operates as a limitation on the rule of capture. *Id.* By the very nature of the rules of ownership and capture, the landowner's right to produce his fair share of oil and gas from a common pool is limited to legitimate operations. *Id.* at 562; *see also Halbouty,* 357 S.W.2d at 375 (in order to harmonize the rule of capture with the theory of ownership of oil and gas in place, the rule of capture must only extend to oil and gas that is legally recovered).

As we have stated, the RRC's finding of regulatory compliance did not constitute a final determination that the wellbore did not cross SWEPI's lease line, and thus was not trespassing or converting gas from SWEPI's lease. When a court must "infer" findings that the RRC did not actually make, there is no preclusive effect. *See Dorchester,* 743 S.W.2d at 252. The RRC findings were limited to whether, based on the partial data available, a directional survey was required under Rule 11. The RRC's finding that the well was in compliance with Rules 11 and Rule 37 was, by its very nature, a preliminary finding because it was made without the benefit of a full directional survey which the parties agreed was the only way to determine the exact bottom hole location of the well. The RRC findings do not support an inference that the well is bottomed on the Casas Tract and is not committing a sub-

surface trespass or converting gas from beneath SWEPI's lease.

Accordingly, we hold that the rule of capture does not preclude the claims for sub-surface trespass and conversion brought by SWEPI and KLT; therefore, the trial court erred in granting Camden's summary judgment on the basis of the rule of capture.

### CONCLUSION

Camden failed to establish that it was entitled to summary judgment as a matter of law based on an affirmative defense. *See* TEX.R. CIV. P. 166a(c). Camden failed to establish collateral estoppel because the RRC's order did not constitute a full and final adjudication of the factual issues underlying the trespass and conversion claims brought by SWEPI and KLT. Further, the RRC did not have jurisdiction to determine the parties' property rights. Finally, the rule of capture does not limit actions for trespass and conversion of oil and gas. Accordingly, the trial court erred when it granted summary judgment in favor of Camden. We reverse the judgment and remand for further proceedings on the trespass and conversion claims asserted by SWEPI and KLT,[12] and on KLT's claims for illegal production and fraudulently obtaining a production allowable from the RRC.

---

12. KLT's trespass claim is based on a theory of sub-surface trespass caused by Camden's use of the hydraulic fracturing technique of drilling wells. Camden has asserted that no such cause of action is recognized in Texas. Because Camden did not raise that argument in its summary judgment motion, and the trial court did not rule on that issue, we need not address the question of whether a cause of action for trespass by hydraulic fracturing exists in Texas.