

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00204-CV

| | | |
|---|---|---|
| Sheffield Development Company, Inc. | § | From the 153rd District Court |
| | § | of Tarrant County (153-252953-11) |
| v. | § | February 1, 2013 |
| Carter & Burgess, Inc. | § | Opinion by Chief Justice Livingston |

## CORRECTED JUDGMENT

After reviewing Carter & Burgess, Inc.'s Unopposed Motion to Modify The Judgment, we grant the motion. We withdraw our December 21, 2012 judgment and substitute the following.

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

It is further ordered that appellant Sheffield Development Company, Inc. shall pay all of the costs of this appeal and that judgment is rendered against Oklahoma Surety Company, the surety on appellant Sheffield Development

Company, Inc.'s supersedeas bond, for the performance of the judgment against appellant and for any costs taxed against appellant, for which let execution issue.

SECOND DISTRICT COURT OF APPEALS

By_____
Chief Justice Terrie Livingston



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00204-CV

SHEFFIELD DEVELOPMENT COMPANY, INC.                 APPELLANT

V.

CARTER & BURGESS, INC.                 APPELLEE

----------

### FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

This is an appeal from the trial court's final judgment for Carter & Burgess, Inc. (C&B), which incorporates two partial summary judgments the trial court had granted in C&B's favor on all claims brought against it by Sheffield Development Company, Inc. (SDC). We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Background

Morrison Homes, a home builder, sued SDC, the developer of a residential subdivision in Tarrant County, and others on April 27, 2007, bringing claims against SDC for breach of contract; breach of warranty; negligence; negligent misrepresentation; negligent hiring or entrustment, or both; and statutory fraud in a real estate transaction. Specifically, Morrison Homes sought to hold SDC liable for postconstruction damages to the homes it built on the lots that SDC sold it, contending that SDC did not deliver the lots to Morrison with the proper grading and drainage, thus causing postconstruction soil movement and damage. On November 23, 2009, SDC filed an original third-party petition against C&B and other subcontractors involved in the development of the subdivision;[2] C&B had provided engineering and surveying services pertaining to the grading of the lots in the subdivision. In its petition against C&B, SDC alleged that C&B was liable for contribution under chapter 33 of the civil practice and remedies code to the extent Morrison recovered against SDC and for negligence, negligent misrepresentation, breach of contract, breach of warranty, and breach of fiduciary duty and duty of good faith and fair dealing.

C&B moved to dismiss the suit on December 18, 2009 under section 150.002(a) of the civil practice and remedies code, claiming that the certificate of

---

[2]SDC had previously named C&B as a third-party defendant around May 26, 2009, but it nonsuited its claims on October 22, 2009 after C&B filed a motion to dismiss.

4

merit provided by SDC's engineer, Robert Adams, was inadequate because he is an engineer rather than a surveyor. Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a) (West 2011). The trial court denied the motion to dismiss on January 12, 2010.

C&B filed a combined traditional and no-evidence motion for summary judgment on June 1, 2010 on SDC's contribution claim. The same day, it filed a combined traditional and no-evidence motion for summary judgment on SDC's breach of contract, breach of warranty, negligence, negligent misrepresentation, and breach of fiduciary duty and good faith and fair dealing claims. The trial court eventually granted both motions in October 2010 by letter ruling. The trial court signed a final take-nothing judgment on October 25, 2010.[3]

### Discovery-Related Issues

In its seventh and eighth issues, SDC complains that the trial court erred by granting either a traditional or no-evidence summary judgment on all of its claims before an adequate time for discovery had passed. In its ninth issue, SDC challenges the trial court's order granting C&B's motion to compel, which SDC claims prevented it from conducting any further material discovery, including scheduled depositions of C&B witnesses.

---

[3]The trial court had already disposed of SDC's claims against the other third-party defendants.

**Motion to Compel**

**Applicable Facts**

The trial court denied C&B's motion to dismiss in January 2010, two months after SDC sued C&B the second time. SDC filed a designation of expert witnesses on January 22, 2010. It also filed a motion to extend the deadline to designate experts the same day. In its motion, SDC asked for an extension of the designation deadlines because it had not been able to depose any of the third-party defendant witnesses. The trial court then signed an order extending the deadline for another three months, to April 16, 2010.[4]

C&B filed its first motion to compel on February 23, 2010. In its motion, C&B claimed that SDC had not fully answered the following interrogatory number 5:

> Please identify/specify each and every lot in the Development which you contend deviated from or failed to conform to the approved grading and drainage plans. For each such lot, please identify and specify:
>
> (a) the specific nature of the alleged deviation or non-conformity;
> (b) the date(s) on which the alleged deviation or non-conformity existed;
> (c) the person(s) and/or event(s) which you contend caused or contributed to the alleged deviation or non-conformity;
> (d) the date the alleged deviation or non-conformity was discovered and by whom; and
> (e) any and all steps taken to correct or remedy the alleged deviation or non-conformity.

---

[4]At that time, Morrison's suit had been pending for almost three years.

SDC had objected to the interrogatory, claiming that it was premature, that SDC would not be able to answer the interrogatory until it had completed its discovery, and that the question improperly required SDC to marshal its proof. SDC then identified "generally" thirty-six lots in the subdivision that "*may have* deviated from or failed to conform to the approved grading and drainage plans." [Emphasis added.] SDC further stated that it did

> not know with specificity the date(s) on which the alleged deviation or non-conformity existed. SDC contends each party to this lawsuit may have caused or contributed to the alleged deviation or non-conformity. SDC does not know with specificity the date the alleged deviation or non-conformity was discovered and by whom. SDC is unaware if any parties have taken any steps to correct or remedy any alleged deviation or non-conformity.

The day after it filed its motion to compel, C&B filed a motion to quash the depositions of Gary Sheffield and C&B's engineer Ed Oram because SDC had not fully answered interrogatory 5. According to C&B, it had "engaged in an incredibly aggressive effort to obtain and review documents (over 30,000 pages) to prepare for depositions," and SDC had planned "a massive 'document dump'" the night before the scheduled depositions the first week in March 2010. C&B contended that it had propounded discovery on SDC in January 2010 after it filed its answer and that it could not adequately prepare for the depositions until it had received an adequate answer to interrogatory 5.

On March 9, 2010, the trial court signed an order requiring SDC to more fully respond to the interrogatory on or before March 16, 2010. The order also

7

states that per the parties' agreement, the Oram and Sheffield depositions would take place on March 25 and 26, 2010.

Also in early March 2010, SDC obtained a trial court order for access to twenty-one of the lots for testing and engineering purposes; all access was to be granted no later than April 22, 2010.

On April 8, 2010, SDC filed an opposed motion for continuance, asking for more time to conduct discovery[5] because it was still having trouble obtaining access to all of the lots to perform required inspections and tests. The motion did not mention the Sheffield and Oram depositions. C&B responded, contending that the motion was not properly verified and that granting it would assist SDC in what it characterized as a fishing expedition. The trial court denied the motion for continuance but extended the expert designation deadlines for another forty-five days, until June 1, 2010.

On April 9, 2010, C&B filed its second motion to compel, in which it alleged that SDC's April 8, 2010 response to interrogatory 5 was still incomplete. That response stated,

> Subject to and without waiving any objections, if Plaintiff's assertion that the land was not developed pursuant to the design documents and the land was not delivered in a condition suitable for construction of residences is true, then C&B failed to meet the applicable standard(s) of care. Generally, the following lots may

---

[5]The deadline for completion of discovery at that time was July 25, 2010; the motion for continuance, however, requested only that trial be set for the first available jury docket after June 22, 2009 and did not contain any other date to which the discovery deadline should be extended.

8

have deviated from or failed to conform to the approved grading and drainage plans:

[list of thirty-six lots]

SDC's experts are investigating these lots to determine which lots may deviate from or fail to conform to the approved grading and drainage plans and, if so, how they deviate from or fail to conform to the approved grading and drainage plans.

Specifically, SDC was present for a site visit at 9621 Courtright on March 17, 2006. . . . SDC observed a walkway around the perimeter of the north and east sides of the home that trapped water next to the house and gutters which discharged the roof water between the walkway and the slab. The neighbor above and behind 9621 Courtright also installed a pool. SDC observed saturated soil located off the southwest corner of the house. At this site visit, SDC did not observe any conditions it believed to be an obvious deviation from the grading or drainage plans. SDC contends it does not have the expertise to make a determination if the issues observed were the result of the failure to conform to the approved grading and drainage plans.

A second meeting was held on Oct. 17, 2006 but the lots were not visited. Morrison did not request any further action from SDC.

For the rest of the lots, SDC does not know with specificity the specific nature of the alleged deviation or non-conformity or the dates on which the alleged deviation or non-conformity existed. SDC did not participate in any site visits on these lots to investigate any issues after the initial remedial work performed by Rodman in late 2001 and the re-certification from C&B on January 18, 2002.

SDC contends Rodman and C&B *may have caused or contributed to* the alleged deviation or non-conformity on all of the lots listed above. . . .

SDC has not taken any action to correct or remedy any alleged deviation or non-conformity since the initial remedial work performed by Rodman in late 2001 and the re-certification from C&B on January 18, 2002. SDC is aware that Morrison is alleging damages related to all of the lots and may have performed remedial work on the lots. However, SDC does not know with specificity which steps

were taken to correct or remedy any alleged deviation or non-conformity with the grading or drainage plans. [Emphasis added.]

C&B cited Gary Sheffield's March 25, 2010 deposition testimony in which he stated that he did not know of any specific defects in the lots and that he did not even know if there were any defects at all. C&B objected to SDC's answer that it was still investigating to determine which lots may have deviated from or failed to conform to the approved grading plans. C&B again accused SDC of engaging in a fishing expedition and asked for $4,000 in attorney's fees to cover the expense of drafting and pursuing the motion to compel.

While the second motion to compel was pending, C&B filed a motion to quash depositions scheduled in May and June 2010, objecting to the dates and times because of SDC's answer to interrogatory 5.

In a May 26, 2010 letter ruling granting C&B's second motion to compel, the trial court found as follows:

1.      The amended answer of [SDC] . . . is vague, evasive and incomplete.

2.      The amended answer wholly fails to provide sufficient information for [C&B] to determine a) the factual basis of the allegations of [SDC] against it, b) whether expert testimony is necessary to confront such allegations, and c) if expert testimony is necessary, the nature and identity of appropriate experts.

3.      It is unfair and prejudicial in light of such a vague, evasive and incomplete answer to require [C&B] to participate in discovery as to [SDC]. . . .

The trial court then ordered SDC to amend its answer by June 10, 2010, barred SDC from offering evidence of defects or errors by C&B pertaining to grading or

10

drainage on any lot other than 9621 Courtright until it more fully answered the interrogatory, ordered that C&B did not need to produce any witnesses for deposition or respond to any discovery requests regarding SDC's claims until the question was answered, and ordered SDC to pay C&B's attorney's fees of $2,000. The trial court subsequently incorporated its findings into an order on June 7, 2010.

C&B filed its first motions for summary judgment on June 1, 2010.

SDC filed a designation of experts on June 2, 2010. It also filed a verified motion for continuance on June 8, 2010 requesting that the summary judgment motions be continued for discovery to be completed by July 25, 2010 in accordance with the then-current scheduling order; trial was set for September 2010. SDC alleged that it had not been able to take any of the additional depositions of C&B witnesses that had been quashed. SDC alleged that the discovery was material in that it related to its claims against C&B: SDC had deposed Oram but could not get specific information on the engineering and surveying services performed by C&B because Oram is not a licensed engineer or surveyor. SDC wanted to take the deposition of Don Allen, the engineer of record for the project, and also of Rick Hickman, the C&B representative "who certified the pad elevations to" SDC. C&B had used Hickman's affidavit to support its previously filed motion to dismiss. SDC further alleged that C&B had not responded to three requests for deposition dates that it had sent in April 2010.

11

On June 10, 2010, the trial court quashed the Allen and Hickman depositions but allowed other depositions to go forward on the agreement of the parties.

C&B filed first amended motions for summary judgment on June 29, 2010. SDC again tried to set depositions for Allen and Hickman in July 2010; C&B again filed a motion to quash, alleging that the trial court had urged the parties to conserve resources that month and to spend their efforts on mediation and settlement conferences, and that the dates were not agreed. Two days later, C&B also moved to strike SDC's experts. Around the same time, SDC filed another verified motion for continuance, in which it alleged that it still did not have the needed depositions. In its motion, SDC stated that it appeared the depositions could go forward on July 14 and 15, 2010.

On July 13, 2010, the parties entered into a rule 11 agreement, in which C&B agreed to reschedule summary judgment hearings to the next available date on the court's calendar, but no sooner than August 11, 2010. C&B filed second amended motions for summary judgment on all of SDC's claims on July 28, 2010.

On July 29, 2010, SDC filed a motion to extend discovery deadlines until August 27, 2010. SDC stated in its motion that it had agreed to delay the Allen and Hickman depositions until after mediation, that it had rescheduled them after mediation, but that they were quashed by another defendant because they had

been set after the discovery deadline.  The record does not contain a ruling on this motion, and the depositions never occurred.

On August 13, 2010, the trial court heard C&B's summary judgment motions. That same day, on Morrison's motion, the trial court also stayed all discovery in the suit until the disposition of a pending interlocutory appeal.[6]  The trial court signed its final judgment in C&B's favor on October 25, 2010.

**Issue**

SDC contends that the trial court abused its discretion by granting C&B's second motion to compel, preventing SDC from taking the Allen and Hickman depositions and thus forcing it to defend C&B's summary judgment motions without adequate, material discovery.  SDC also contends that the trial court compounded this error by denying its April 2010 motion to extend the July 25, 2010 discovery deadline and by staying all proceedings in the case except the proceedings on C&B's motions for summary judgment.

**Standard of Review**

Trial courts have broad discretion to impose discovery sanctions to secure compliance with discovery rules, to deter other litigants from similar misconduct, and to punish violators.  *In re Estate of Preston*, 346 S.W.3d 137, 156 (Tex. App.—Fort Worth 2011, no pet.); *see Chrysler Corp. v. Blackmon*, 841 S.W.2d

---

[6]This court disposed of the interlocutory appeal on March 3, 2011, and the supreme court denied the petition for review on January 27, 2012. *CTL/Thompson Tex., LLC v. Morrison Homes*, 337 S.W.3d 437 (Tex. App.—Fort Worth 2011, pet. denied).

13

844, 849 (Tex. 1992). We therefore review a trial court's imposition of discovery sanctions for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004); *Estate of Preston*, 346 S.W.3d at 156. In reviewing sanctions orders, we are not bound by a trial court's findings of fact and conclusions of law; rather, we must independently review the entire record to determine whether the trial court abused its discretion. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006); *Estate of Preston*, 346 S.W.3d at 156.

Texas rule of civil procedure 215.2(b) allows a trial court to sanction a party for failure to comply with a discovery order or request. Tex. R. Civ. P. 215.2(b). Sanctions that a trial court may impose include an order refusing to allow the disobedient party to support or oppose designated claims or defenses and an order striking out pleadings or rendering a judgment by default against the disobedient party. Tex. R. Civ. P. 215.2(b)(4), (5).

In discovery-sanction cases, a trial court's discretion is limited by the requirement of rule of civil procedure 215.2(b) that the sanctions be "just" and by the parties' constitutional right to due process. *TransAm. Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917–19 (Tex. 1991) (orig. proceeding); *Estate of Preston*, 346 S.W.3d at 156. A sanction is just if a direct relationship exists between the offensive conduct and the sanctions imposed. *TransAm. Natural Gas Corp.*, 811 S.W.2d at 917; *Estate of Preston*, 346 S.W.3d at 156. A direct nexus exists when the sanction is directed against the true offender and is tailored to remedy any prejudice the discovery abuse caused. *TransAm. Natural*

14

*Gas Corp.*, 811 S.W.2d at 917; *Estate of Preston*, 346 S.W.3d at 157. To be just, a sanction must also not be excessive. *TransAm. Natural Gas Corp.*, 811 S.W.2d at 917; *Estate of Preston*, 346 S.W.3d at 157. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. *Cire*, 134 S.W.3d at 839; *Estate of Preston*, 346 S.W.3d at 157.

**Analysis**

SDC claims that by granting C&B's second motion to compel and requiring it to more fully answer interrogatory 5, the trial court improperly required it to marshal all of its proof contrary to rule 197.1, required SDC to respond with information that was not reasonably available, and required SDC to respond with expert testimony when the question asked for none. Additionally, SDC claims that by preventing it from obtaining critical discovery, the trial court's order effectively granted death penalty sanctions without first exploring lesser options.

Contention discovery is permitted by the rules of civil procedure. Tex. R. Civ. P. 192.3(j) ("A party may obtain discovery of any other party's legal contentions and the factual bases for those contentions."). But all that is required is a basic statement of those contentions and not a marshaling of evidence. Tex. R. Civ. P. 192 cmt. 5; *In re Gen. Motors Corp.*, No. 12-07-00387-CV, 2008 WL 541679, at *3 (Tex. App.—Tyler Feb. 29, 2008, orig. proceeding) (mem. op.). Marshaling means "[a]rranging all of a party's evidence in the order that it will be presented at trial." Black's Law Dictionary 1063 (9th ed. 2009). Interrogatory 5

did not therefore require SDC to "marshal" its proof. Instead, it sought the facts underlying SDC's claims against C&B, which "is the very purpose of discovery." *In re SWEPI L.P.,* 103 S.W.3d 578, 590 (Tex. App.—San Antonio 2003, orig. proceeding). Moreover, even if the factual basis of a party's claims is supplied by an expert or experts, the party "must still reveal the factual basis of the claims . . . , regardless of how those facts may ultimately be proved at trial." *Id.* (citing *Able Supply Co. v. Moye*, 898 S.W.2d 766, 771 (Tex. 1995) (orig. proceeding)).

In his affidavit supporting SDC's certificate of merit underlying the suit, SDC's expert Adams stated that, based on his review of C&B's 2001 and 2002 certifications of the lot grading and his visual inspection of at least some of the lots, he had determined that it was apparent that the lots and retaining walls were not constructed in accordance with the approved subdivision grading plans. SDC's contention that it could not determine the facts supporting its claims against C&B until it obtained further discovery compels one of two conclusions: either SDC's expert had provided it with the facts necessary to state a claim and SDC did not include those facts in its response to interrogatory 5, or SDC was seeking discovery from C&B to obtain the facts it needed to support its claim. SDC's failure to fully answer interrogatory 5, along with its insistence that it could not do so until it had taken depositions from C&B's witnesses, tends to support a conclusion that SDC needed more discovery to obtain any evidence to defeat a summary judgment motion. *See* Tex. R. Civ. P. 166a(g); *Tenneco Inc. v. Enter.*

16

*Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996) (orig. proceeding); *Jaimes v. Fiesta Mart, Inc.*, 21 S.W.3d 301, 304 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). But courts may presume that a plaintiff has sufficiently investigated his own case prior to filing it. *Wright v. Sydow*, 173 S.W.3d 534, 550 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *Laughlin v. Bergman*, 962 S.W.2d 64, 66 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). Thus, we conclude and hold that the trial court did not abuse its discretion by granting C&B's motion to compel.[7] *See, e.g.*, *Able Supply Co.*, 898 S.W.2d at 771 (holding that trial court abused its discretion by denying defendants' motion to compel which sought facts underlying causation element of multiple plaintiffs' claims in complex toxic tort litigation). Moreover, for the same reason, we conclude and hold that the trial court did not abuse its discretion by refusing to extend the discovery deadline and by staying further discovery while it considered the summary judgment motions.

We overrule SDC's ninth issue.

**Adequate Time for Discovery**

We review a trial court's determination that there has been an adequate time for discovery on a case-by-case basis under an abuse of discretion

---

[7]Additionally, because the trial court here did not prevent SDC from accessing the lots in question or from developing facts to support its case through its own expert, we do not agree with SDC's description of the trial court's order as imposing death penalty sanctions. *Cf. Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 845 (Tex. 1992) (defining death penalty sanction as a sanction that terminates the presentation of the merits of a party's claims).

17

standard. *LaRue v. Chief Oil & Gas, L.L.C.*, 167 S.W.3d 866, 873 (Tex. App.—Fort Worth 2005, no pet.); *see Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986).[8] In considering whether the trial court permitted an adequate time for discovery, we consider the following factors: (1) the nature of the case, (2) the nature of the evidence necessary to controvert the no-evidence motion, (3) the length of time the case was active, (4) the amount of time the no-evidence motion was on file, (5) whether the movant had requested stricter deadlines for discovery, (6) the amount of discovery that already had taken place, and (7) whether the discovery deadlines in place were specific or vague. *Brewer & Pritchard, P.C. v. Johnson*, 167 S.W.3d 460, 467 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

The evidence shows that the suit against SDC had been pending for about two and one half years before SDC filed its third-party petition against C&B; SDC's claims against C&B had been pending for a little over six months when C&B filed its first motions for summary judgment. C&B had propounded discovery and was attempting to obtain answers to interrogatory 5 that would allow it to prepare a defense to SDC's claims. Although SDC explained to the trial court that it was having difficulty obtaining access to the individual lots for inspection and testing purposes, it never explained why it had taken three years

---

[8]The same standard of review applies to claims of a lack of adequate discovery before a trial court grants a traditional summary judgment. *Cooper v. Circle Ten Council Boy Scouts of Am.*, 254 S.W.3d 689, 696 (Tex. App.—Dallas 2008, no pet.).

18

to do so or why its expert's prior visual inspection, which he had stated was sufficient to determine that the lots and retaining walls were not constructed according to the approved grading plans and to determine that C&B was at fault, could not provide the facts necessary to answer interrogatory 5. The trial court had issued its sixth scheduling order by the time summary judgment was granted and had acquiesced in several extensions of designation deadlines and agreed dates between the parties. Accordingly, we conclude and hold that the trial court did not abuse its discretion by determining that an adequate time for discovery had elapsed before granting C&B's summary judgment motions. *See, e.g.*, *In re Guardianship of Patlan*, 350 S.W.3d 189, 196–97 (Tex. App.—San Antonio 2011, no pet.); *Montoya v. Bluebonnet Fin. Assets*, No. 02-09-00301-CV, 2010 WL 4261481, at *4 (Tex. App.—Fort Worth Oct. 28, 2010, no pet.) (mem. op.). We overrule SDC's seventh and eighth issues.

## Merits of Summary Judgment Motions

In its first four issues, SDC challenges the trial court's summary judgment on all of its claims against C&B, on either traditional or no-evidence grounds.

### Standards of Review

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their

19

conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

We review a traditional summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

20

**Breach of Fiduciary Duty/Good Faith and Fair Dealing**

C&B claimed in its no-evidence motion for summary judgment, among other things, that SDC could produce no evidence of a special relationship.

Fiduciary duties may arise from formal and informal relationships. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 593–94 (Tex. 1992) (op. on reh'g), *superseded by statute on other grounds as stated in Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex. 2002) (op. on reh'g). Whether a fiduciary duty exists between parties depends on the circumstances. *Lindley v. McKnight*, 349 S.W.3d 113, 124 (Tex. App.—Fort Worth 2011, no pet.); *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 698 (Tex. App.—Fort Worth 2006, pet. denied). A person is justified in placing confidence in the belief that another party will act in his best interest only when he is accustomed to being guided by the judgment or advice of the other party and there exists a long association in a business relationship as well as personal friendship. *Lindley*, 349 S.W.3d at 125. Therefore, to "impose such a relationship in a business transaction, there must be a fiduciary relationship before, and apart from, the agreement made the basis of the suit." *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998); *see Crim Truck*, 823 S.W.2d at 594 ("The fact that one businessman trusts another, and relies upon his promise to perform a contract, does not rise to a confidential relationship."). Furthermore, "mere subjective trust does not, as a matter of law, transform arm's-length

dealing into a fiduciary relationship." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997).

The Texas Supreme Court has specifically rejected the notion that a general duty of good faith and fair dealing is implied in all contracts. *City of Midland v. O'Bryant*, 18 S.W.3d 209, 215 (Tex. 2000) (op. on reh'g). Such a duty may be implied, however, when there is a "special relationship" between the contracting parties, such as insurer-insured. *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). A "special relationship" is one in which "there is unequal bargaining power between the parties and a risk exists that one of the parties may take advantage of the other based upon the imbalance of power." *Laredo Med. Group v. Lightner*, 153 S.W.3d 70, 72–73 (Tex. App.—San Antonio 2004, pet. denied) (op. on reh'g).

SDC does not contend that there was a formal fiduciary relationship between the parties. We have found no cases recognizing a fiduciary duty as a matter of law of engineers to their clients. Therefore, here, to create a fact issue about the existence of an informal fiduciary duty, SDC needed to offer evidence of a moral, social, domestic, or purely personal relationship of trust and confidence that existed before the 2001 contract between SDC and C&B. *See Morris*, 981 S.W.2d at 675; *Crim Truck*, 823 S.W.2d at 594.

SDC points to Gary Sheffield's affidavit, in which he states that SDC had worked with C&B for twenty-nine years, that SDC did not directly hire engineers and relied on C&B for all of its engineering and survey services, that SDC relied

22

on C&B to certify that work because SDC did not have the skill, training, or experience to perform that work itself, and that SDC relied on C&B's certification of the work of others with "utmost faith and confidence and trust." Sheffield's affidavit, however, does nothing more than show a history of a business relationship with C&B involving subjective trust that C&B would perform its expected duties. *See, e.g.*, *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005); *Crim Truck*, 823 S.W.2d at 595. Nor does it show such an unequal balance of bargaining power that a risk existed that C&B would take advantage of SDC. *See Affiliated Capital Corp. v. Sw., Inc.*, 862 S.W.2d 30, 34 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Thus, we conclude and hold that the trial court did not err by determining that there is no evidence of the type of relationship necessary to raise a fact issue on SDC's breach of fiduciary duty claim.

**Negligence and Contribution**

C&B alleged that SDC could not come forward with more than a scintilla of evidence that any of its alleged acts or omissions caused SDC's damages under a negligence theory or Morrison's damages under a contribution theory.[9] SDC points to the following evidence as raising a fact issue as to causation.

---

[9]SDC sought contribution from C&B under chapter 33 of the civil practice and remedies code; thus, its contribution claim applies only to Morrison's tort claims against SDC and not the breach of contract and breach of express warranty claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.002 (West 2008); *CBI NA-CON, Inc. v. UOP, Inc.*, 961 S.W.2d 336, 341 (Tex. App.—Houston [1st Dist.] 1997, pet. denied); *see also Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 61–62 (Tex. 2008) (holding that breach of express warranty claims are contractual in nature).

SDC provided an affidavit from its engineering expert, Robert Adams, in which Adams opines that, based on his visual observations of the subdivision in 2009, his review of the record drawings of the lot grading plan prepared by C&B, and his review of 2010 measurements of the elevations at many of the subdivision lots, it was his opinion that

> the omissions by [C&B] *were a contributing factor* to the grading and drainage deviations from the approved plans, resulting in water accumulation along the surface and within the subsurface contributing to the movement of the soil, which *could be* the cause of foundation failures. It should have been foreseeable by [C&B], that were the grading and drainage plan not followed by the contractor(s) and/or home builder(s), the potential for standing water within the lot and possible flooding of an adjacent structure was a possibility. [C&B] had a responsibility to [SDC] to find any deviations from the approved grading and drainage plan, caused by the contractor(s) and/or home builder(s), and to report said deviations. Had said deviations been reported [to] their client by [C&B], then [SDC] could have requested corrective measures be taken by the home builder(s) and thereby potentially preventing some of the problems incurred as described by the home owners, engineering experts and foundation experts.
>
> Based upon my review of the field measurements performed by JPH Surveying, it is evident that not all rear lot corner elevations are within the allowable tolerance. It is unlikely that these walls have been revised, rebuilt or altered in regard to the final top and bottom wall elevations, since final acceptance of the lots by the home builder. Therefore, [C&B] misrepresented to their client and the home builder(s) that all lots were in general conformance with the approved grading and drainage plan.

[Emphasis added.] Thus, Adams does not point to any deficiencies in the approved plan, but rather he opines that C&B wrongly certified that the lots were in conformance with the approved plan.

24

SDC says that this affidavit—along with reports from an engineer that, according to SDC, "causally link soil movement to Morrison's alleged damages" on four of the lots—provides sufficient evidence of causation. The 2008 engineering reports from Blake Wilson relied on observation of and tests on four of the lots between 2006 and 2008. All of the reports state, "In this case, the home *may have been affected* by a moderate amount of post-construction foundation movement. The foundation movement that affected this home can be attributed to moisture-related shrinkage and swelling of the sub-grade soil." [Emphasis added.] All of the reports note that "[p]ost-construction foundation movement is not uncommon for recently completed homes built upon what was initially relatively dry soil." In addition, all of the reports limit the applicability of the conclusion to "the conditions observed at the time of the investigation."

The elements of causation are cause in fact and foreseeability. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004).

Although Adams opines that C&B's omissions were a contributing factor to Morrison's damages, he does not state that but for those acts or omissions, the damages would not have occurred. Thus, his affidavit does not provide sufficient evidence of causation under the applicable standard. *See Childs v. Crutchfield*, No. 09-07-00065-CV, 2007 WL 5075982, at *6 (Tex. App.—Beaumont

Apr. 10, 2008, pet. denied) (mem. op.); *see also Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex. 1991) (holding that it is not enough that harm would not have occurred had actor not been negligent and that actor's negligence must also be a substantial factor in bringing about the plaintiff's harm).

Additionally, Adams's opinion that C&B must have misrepresented the elevations at the rear lot corners because it is unlikely that the retaining walls had been altered since C&B was to certify them is conclusory. Conclusory testimony constitutes no evidence and is insufficient to raise a fact question to defeat a no-evidence motion for summary judgment. *Wal-Mart Stores, Inc. v. Merrell*, 313 S.W.3d 837, 839 (Tex. 2010); *IHS Cedars Treatment Ctr.*, 143 S.W.3d at 803; *Chesser v. LifeCare Mgmt. Servs., L.L.C.*, 356 S.W.3d 613, 623 (Tex. App.—Fort Worth 2011, pet. denied). An expert must explain the basis of his statements to link his conclusions to the facts. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009). Thus, an expert's opinions must be supported by facts in evidence, not merely conjecture. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 729 (Tex. 2003). An expert's opinions cannot rest on the expert's subjective interpretation of the facts. *See TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 239 (Tex. 2010).

Adams concludes that because the rear property lot elevations were not in conformance with the lot grading and drainage plans in 2009, C&B must have failed to properly certify their conformance in late 2001 and early 2002. SDC contends that Adams's conclusion is supported by the Wilson reports. However,

26

the Wilson reports are limited by their terms to the time period between 2006 and 2008, and they specifically attribute the damage to the homes to postconstruction movement due to swelling and shrinkage of the subgrade soils, which the reports state is common for the area. Thus, the Wilson reports do not support Adams's bare conclusion that the lots were not in conformance with the approved plans in 2001 and 2002. Additionally, even if Adams's conclusion that the lots were initially nonconforming were true, he has still only concluded that such a condition only possibly contributed to the damage to the homes. This is not the proper standard for causation. *See Lear Siegler, Inc.*, 819 S.W.2d at 472. Thus, we conclude and hold that the trial court did not err by granting a no-evidence summary judgment on C&B's negligence and contribution claims.

**Breach of Contract and Breach of Warranty**

C&B moved for a traditional and no-evidence summary judgment on SDC's breach of contract and breach of warranty claims, contending that SDC could produce no evidence of damages or injury as a result of any breach.

According to SDC, its contract claim "is based on C&B's breach of its commitment to provide that an 'Engineer will certify lot grades at rear lot property corners.'" SDC also claimed that C&B breached its express contractual warranty to "be responsible, to the level of competency presently maintained by other practicing professional engineers in the same type of work in [SDC's] community, for the professional and technical soundness, accuracy, and adequacy of all design, drawings, specifications, and other work and materials furnished." SDC

27

contends that it at least raised a fact issue that C&B's breach of these contractual provisions caused it damages as evidence of its attorney's fees spent in the Morrison litigation and lost time and profits incurred by SDC in participating in the defense of the Morrison suit.

SDC contends that although C&B specifically challenged the breach, causation, and damages elements of its breach of contract claim, it failed to challenge any specific elements of its breach of warranty claim; therefore, the trial court could not have properly granted a no-evidence summary judgment on its breach of warranty claim. *See* Tex. R. Civ. P. 166a(i); *Timpte Indus.*, 286 S.W.3d at 310. However, C&B stated in the summary of the argument section of its motion that "[t]here is no evidence of causation or harm on *all of* [SDC's] claims." [Emphasis added.] Causation and harm are elements of both a breach of contract and breach of warranty claim. *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 215 (Tex. App.—El Paso 2010, pet. denied); *Kiesel v. Rentway*, 245 S.W.3d 96, 101 (Tex. App.—Dallas 2008, pet. dism'd). Thus, we conclude and hold that C&B's no-evidence motion was sufficient under rule 166a(i) as to SDC's breach of warranty claim. *See Preston Nat'l Bank v. Stuttgart Auto Ctr. Inc.*, No. 05-09-00020-CV, 2010 WL 3310727, at *2–3 (Tex. App.—Dallas Aug. 24, 2010, no pet.) (mem. op.). We therefore overrule SDC's second issue.[10]

---

[10]SDC makes the same argument regarding the negligent misrepresentation claim, but we do not address it in that context because we

SDC's breach of contract and breach of warranty claims fail for the same reason stated above as to their negligence and contribution claims: SDC did not bring forward any credible summary judgment evidence showing that even if C&B breached the contract by failing to certify the rear lot property corners—or by breaching its warranty to provide a competent product—that the damage to the homes built by Morrison resulted from such breaches. SDC points also to Adams's affidavit and the Wilson reports; however, as we have explained above, Adams's causation opinion is conclusory and thus no-evidence. And the Wilson reports do not attribute a cause to the damages to the homes other than subsurface soil movement, which the reports say is common for homes in that area. Accordingly, we conclude and hold that the trial court did not err by granting a no-evidence summary judgment on C&B's breach of contract and breach of warranty claims.

**Objections**

SDC complains in its sixth issue that the trial court abused its discretion by sustaining C&B's objections to some of SDC's summary judgment evidence. SDC contends that the trial court's sustaining the objections improperly caused the rendition of an improper verdict because it excluded evidence of C&B's breach of duties to SDC and of SDC's resulting damages. The only statement in the excluded letters that SDC contends is evidence of causation is the following:

dispose of the negligent misrepresentation claim on traditional summary judgment grounds.

29

"*Provided that these same measurements [taken in 2010] were taken in 2001*, a reasonable and prudent surveyor would have brought these differences to the engineer's attention and the engineer would not have been able to certify lot grades at the rear property corners as required by the contract."  [Emphasis added.]  The complained-of evidence does not provide evidence of causation in that it contains nothing about the state of the property in late 2001 and early 2002 and speaks only in terms of speculation.  Thus, even if the trial court abused its discretion by sustaining C&B's objections and excluding the evidence, SDC would still not have met its burden to bring forward sufficient evidence of causation.  *See Plunkett v. Conn. Gen. Life Ins. Co.*, 285 S.W.3d 106, 116–17 (Tex. App.—Dallas 2009, pet. denied).  We overrule SDC's sixth issue.

**Negligent Misrepresentation**

SDC contends that it presented evidence of negligent misrepresentations by C&B in two January 21, 2002 letters regarding the project, in which C&B stated the following:

> On this date, representatives of [C&B] made a visual observation of the as-built lot grading for this subdivision.  Based on this observation:
>
> ● All of the lots generally conform to the As-Built Lot Grading Plans for the subdivision, *and it appears that no significant cut or fill work should be required to render each lot buildable.*
>
> ● Lot pads *and lot swales* are generally constructed as shown on the Lot Grading Plans.

[Emphasis added.]

Although a party's actions may breach duties in tort, contract, or both, Texas jurisprudence has long recognized that "mere nonfeasance under a contract creates liability only for breach of contract." *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex. 1996). Thus, tort damages are generally not recoverable unless the plaintiff suffered an injury that is independent and separate from the economic losses recoverable under a breach of contract claim. *See Formosa Plastics Corp., USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45–47 (Tex. 1998) (op. on reh'g). The independent injury rule applies to claims for negligent misrepresentation. *See D.S.A., Inc. v. Hillsboro ISD*, 973 S.W.2d 662, 663–64 (Tex. 1998); *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 467 (Tex. App.—Dallas 2006, pets. denied) (op. on reh'g).

According to C&B, the representations in italics above were outside the scope of the contract between the parties. The contract provided that C&B was responsible for providing final lot grading plans as part of the contracted engineering services. It also provided that after the completion of pad grading, the "Engineer (Surveyor) [would] check pad grade elevations to within (±0.30') [and] provide certification of pad grades in writing to verify substantial completion." Substantial completion does not appear to be defined in the contract, but in SDC's contract with Morrison, one of the requirements for "substantial completion" of the lots to be purchased by Morrison is that the "Project Engineer shall have certified to [Morrison] that each Lot has been rough

31

graded per the engineered Grading Plan and that no 'cut or fill' work in excess of .3 feet will be necessary for [Morrison] to achieve finished ground elevations as required by the Grading Plan."

Grading refers to the leveling off of a surface. Merriam Webster's Collegiate Dictionary 505 (10th ed. 1996). A swale is defined as "a low-lying or depressed and often wet stretch of land." *Id.* at 1189. Thus, by its very terms, the contract between SDC and C&B contemplates a certification that the grading and swales conform to the general lot grading plan. Therefore, we conclude and hold that the trial court did not err by determining that the alleged negligent misrepresentations were not outside the scope of the contract, that SDC's cause of action is for breaching of the contract by the alleged improper certification of the conformance of the lot grading, and therefore that summary judgment was proper on SDC's negligent misrepresentation claim.

Having held that the trial court did not err by granting summary judgment on each of SDC's claims against C&B on either traditional or no-evidence summary judgment grounds, we overrule SDC's first, third, and fourth issues.

### Summary Judgment – Attorney's Fees

In its fifth issue, SDC contends that the trial court erred by granting C&B a traditional summary judgment on its counterclaim for attorney's fees. SDC claims that C&B was not a prevailing party because it did not recover damages and that its counsel's supporting affidavit is not competent summary judgment evidence.

The contract between C&B and SDC provided that the losing party would pay the prevailing party reasonable fees, costs, and expenses. Because we have held that the trial court did not err by granting C&B's motions for summary judgment, C&B remains the prevailing party in this litigation. *See City of Amarillo v. Glick*, 991 S.W.2d 14, 17 (Tex. App.—Amarillo 1997, pet. denied) (holding that a prevailing party is one who successfully defends against a suit).

SDC nevertheless contends that the evidence is insufficient to support the fee award because C&B's counsel's uncontroverted affidavit is conclusory in that it "fail[s] to take into account the established principles regarding the reasonableness of fees under the lodestar or any other recognized method." SDC also contends that counsel's estimation that at least eighty-five percent of his time and fees would have been necessary even if the breach of contract claim were the only claim in the suit is mere conjecture and thus counsel failed to properly segregate his fees.

Although reasonableness of an attorney's fee award often presents a question of fact, an affidavit filed by the movant's attorney that sets forth the attorney's qualifications, opinion regarding reasonable attorney's fees, and basis for the opinion will be sufficient to support summary judgment, if uncontroverted. *E.g.*, *Sundance Minerals, L.P. v. Moore*, 354 S.W.3d 507, 514 (Tex. App.—Fort Worth 2011, pet. denied). Texas courts consider eight factors when determining the reasonableness of attorney's fees:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (op. on reh'g); *Gaughan v. Nat'l Cutting Horse Ass'n*, 351 S.W.3d 408, 422 (Tex. App.—Fort Worth 2011, pet. denied).

In the affidavit, counsel set forth his qualifications, including that he has been a licensed attorney in the State of Texas since 1995 and is familiar with reasonable and necessary fees charged in Tarrant County. Counsel stated that in preparing the affidavit, he had reviewed the billing records of his firm and that he had relied on *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006), in identifying "discrete legal services that either specifically

concerned [SDC's] breach of contract claim or that were discrete legal services that advanced the summary judgment for breach of contract, and [were] intertwined with other claims, defenses and issues." Counsel then summarized the central points of SDC's claims against C&B and stated that "[t]o defend any of these claims, [C&B] needed to rebut the factual allegations and contentions of [SDC] and show that [C&B's] professional services were within the applicable standard of care. [C&B] further needed to pursue valid legal defenses." Counsel summarized the type of work performed by C&B's legal team—drafting and responding to discovery, reviewing documents, conducting research, drafting and filing motions, attending hearings, attending site visits, and attending and participating in several depositions—and opined that "[t]hese activities would have had to occur even if the only claims in this case had been [SDC's] claim that [C&B] breached its contract and [C&B's] counterclaim for attorneys' fees." Counsel then opined that at least eighty-five percent of the time spent by C&B's legal team would have been necessary even if the only claims pending were the breach of contract and attorney's fees claims.

Counsel went on to specify that he charged a reduced hourly rate of $235 in this case; he also listed reduced hourly rates for four associates and two paralegals who assisted in the litigation. Counsel averred that he personally reviewed the billing records attached to the affidavit,[11] which showed attorney's

_____

[11]The affidavit has 140 pages of billing records attached, which identify the different lawyers and paralegals by initials and which detail the work done. *Cf. El*

fees of $300,597.35, and that those fees were calculated by multiplying the number of hours by the rate of the attorney performing the work. Counsel averred that this total is reasonable and necessary for this matter and usual and customary "in this area" for the same or similar services provided by attorneys with similar experience, reputation, and ability. Counsel further averred that

> Based on reviewing the bills, my knowledge of the work required, and the law, the procedures and facts involved, it is my estimate that handling the breach of contract claim constituted at least 85% of the attorney time of the entire case. As discussed herein, it is my opinion that (at a minimum) 85% of these fees, totaling $255,507.75 ($300,597.35 X 85% = $255,507.75) would have been necessary if the only claims pending were [SDC's] claim for breach of contract and [C&B's] counterclaim for attorney fees. Further, [C&B's] counterclaim was both legally and factually intertwined with [SDC's] claim for breach of contract. Based on my professional knowledge and experience, $255,507.75 constitutes a reasonable and necessary attorney fee for handling the breach of contract claim and [C&B's] counterclaim for attorneys' fees, as of this date.

Thus, counsel provided evidence of at least three of the *Arthur Andersen* factors—the time and labor required, the customary local fee, and the experience of the lawyers providing services. Additionally, counsel demonstrated to the trial court how he calculated the fee he was requesting and explained the percentage of the work attributable to the claims. Accordingly, we conclude and hold that counsel's affidavit was not conclusory and based upon conjecture and that it

---

*Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012) ("[W]hen there is an expectation that the lodestar method will be used to calculate fees, attorneys should document their time much as they would for their own clients, that is, contemporaneous billing records or other documentation recorded reasonably close to the time when the work is performed.").

properly segregated the fees under the principles of *Tony Gullo Motors*; thus, the affidavit was sufficient evidence supporting the trial court's attorney's fees award. *See Tony Gullo Motors*, 212 S.W.3d at 314; *Tex. Commerce Bank Nat'l Ass'n v. New*, 3 S.W.3d 515, 517–18 (Tex. 1999); *RM Crowe Prop. Servs. Co. v. Strategic Energy, L.L.C.*, 348 S.W.3d 444, 453 (Tex. App.—Dallas 2011, no pet.); *Werley v. Cannon*, 344 S.W.3d 527, 536 (Tex. App.—El Paso 2011, no pet.).

Moreover, despite SDC's claim that C&B did not plead for appellate attorney's fees, we conclude and hold that the issue was tried by consent. *See* Tex. R. Civ. P. 67; *Trinh v. Lang Van Bui*, No. 14-11-00442-CV, 2012 WL 5378112, at *10 (Tex. App.—Houston [14th Dist.] Nov. 1, 2012, no pet. h.) (mem. op.).

Finally, SDC argues that the affidavit was incompetent because it was not served within twenty-one days of the hearing on the motions; however, SDC did not object on those grounds in the trial court and in fact agreed to the hearing and shortened notice date. *See Simmons v. Kuzmich*, 166 S.W.3d 342, 351 (Tex. App.—Fort Worth 2005, no pet.); *Fraud-Tech, Inc. v. Choicepoint, Inc.*, 102 S.W.3d 366, 377 & n.31 (Tex. App.—Fort Worth 2003, pet. denied).

Thus, we conclude and hold that the trial court did not err by granting summary judgment for C&B on its claim for attorney's fees. We overrule SDC's fifth issue.

**Conclusion**

Having overruled SDC's nine issues, we affirm the trial court's judgment.


                                                          TERRIE LIVINGSTON
                                                          CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

DELIVERED:  December 21, 2012