

# NUMBER 13-26-00231-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE RICHARD GONZALES

## ON PETITION FOR WRIT OF MANDAMUS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Peña and Fonseca**
**Memorandum Opinion by Justice Peña[1]**

By petition for writ of mandamus, relator Richard Gonzales asserts that the trial court[2] abused its discretion by granting a motion for discovery under the Texas Citizens Participation Act (TCPA). *See* TEX. CIV. PRAC. & REM. CODE § 27.006(b). We conditionally

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number C-5167-25-D in the 206th District Court of Hidalgo County, Texas, and the respondent is the Honorable Rose Guerra Reyna. *See id.* R. 52.2.

grant the petition for writ of mandamus.

## I.    BACKGROUND

Real parties in interest Melissa Jalomo, Stacy Solis, and Eduardo de la Rosa, who are precinct chairs for the Hidalgo County Democratic Party, filed suit against Gonzales, individually and as chair of the Hidalgo County Democratic Party County Executive Committee (CEC), Kenna Giffin, individually and as treasurer of the CEC, and the Hidalgo County Democratic Party. Their complaints concerned an alleged "sham meeting" of the CEC held on August 7, 2025, at which the CEC adopted several actions including the appointment of precinct chairs and further concerned who possessed control over the CEC's bank accounts. In their second amended original petition for writ of mandamus, the real parties sought "to enforce provisions of the Texas Election Code" and specifically requested the trial court to issue a writ of mandamus commanding:

1.    the CEC and the CEC Chair to vacate the action taken by the CEC at the August 7, 2025 meeting;

2.    the CEC Chair to call a meeting of the CEC, giving CEC members reasonable notice thereof, as required by party rules, but no less than 5 days from the date of issuance of the writ of mandamus, for reconsideration by the CEC of the items considered and voted on at the CEC August 7, 2026 meeting;

3.    the CEC [C]hair and the CEC to vacate and to not implement any of the actions taken by the CEC at its August 7, 2025 CEC meeting;

4.    the CEC and the CEC Chair and the CEC Treasurer to produce for [the real parties'] review, and review by the CEC, no later than five days from the date a writ of mandamus issue[s], (a) record[s] of all reportable political contributions and political expenditures and (b) the records of reportable political activity on which reports to the Texas Ethics Commission of political contributions and political expenditures are based, including the following records required [by] Commission Rule § 20.18 to be preserved by the CEC and the CEC Treasurer[]: bank statements of all campaign activity, invoices or bills

2

for campaign expenditures, copies of checks paid for campaign activity, receipts for reimbursed campaign expenses, employee times sheets and payroll records;

5.      the CEC Chair and the CEC Treasurer to produce or make accessible, within no later than 5 days from the date of issuance of a writ of mandamus, to the CEC and to [the real parties], all records of reportable activity which document contributions or the receipt of any reportable item during fiscal years 2024 and 2025 by CEC, the CEC Treasurer or the CEC Chair from Texas Majority PAC, including, but not limited to, contributions or receipts of any reportable item mistakenly delivered to the CEC, the CEC Chair, the CEC Treasurer, or any one on their behalf[;]

6.      the CEC and CEC Chair to withdraw, retract, amend, or correct, as appropriate, and to resubmit to the Secretary of State within no later than five days of the issuance of a writ of mandamus of a correct, duly authorized, roster of precinct chairs which has been confirmed and ratified by the CEC;[]

7.      [the CEC Chair] to call a CEC meeting no later than five days after the date of issuance of the writ of mandamus after giving sufficient notice as required by party rules to consider the confirmation and ratification of precinct chairs to fill current precinct chair vacancies;

8.      [the CEC Chair] that henceforth all CEC members be given at least a 5-day advance notice of any CEC meeting in accordance with party rule[; and]

9.      [the CEC Chair] to call and hold an emergency meeting of the CEC only on the condition that he reasonably describe the circumstances which give rise to the need for an emergency meeting, certify in good faith when he learned of the emergency circumstances and that under no reasonable circumstances could the emergency CEC action reasonably be avoided.

Thereafter, Gonzales[3] filed a motion to dismiss the real parties' suit under the

TCPA on grounds that it constituted a legal action that was based on, relates to, or was

made in response to "the exercise of the right of association in a local political party." *See*

---

[3] The motion to dismiss states that the real parties' amended petition omits the CEC as a party to the lawsuit; however, "because [Gonzales] is also being sued in his official capacity, in an abundance of caution the [CEC] joins in this motion as well."

TEX. CIV. PRAC. & REM. CODE § 27.001(2) (defining the exercise of the right of association). He characterized the real parties' lawsuit as "an effort to have the Court manage and compel the internal governance of the [CEC], including meeting procedure, notice requirements, signatory authority over party accounts, precinct-chair confirmations, and party records." Gonzales asserted that the CEC "is a political association organized to collectively pursue common interests relating to governmental proceedings and matters of public concern, including the administration of primary elections and political participation," and that the real parties' requested relief "seeks to influence and control how that public purpose political association operates." He contended, in short, that "Texas courts do not adjudicate intra-party governance disputes absent clear statutory authorization, and [real parties'] requested relief confirms they seek judicial supervision of party operations." Gonzales supported the motion to dismiss with his January 29, 2026 affidavit. In the affidavit, Gonzales averred, in part:

3.    During the time period referenced in [the real parties'] Second Amended Original Petition for Writ of Mandamus, I served as Chair of the [CEC]. I am familiar with the CEC's customary meeting practices, the Party's internal governance procedures, and the administration of CEC business.

4.    The CEC is a political association composed of members who join together to collectively express, promote, pursue, and defend shared political interests, including interests related to primary elections, precinct conventions, and party governance of the Democratic Party. The CEC's work includes organizing and conducting internal party activities and coordinating actions related to election-cycle operations and political participation.

5.    I have reviewed [the real parties'] Second Amended Original Petition for Writ of Mandamus in this cause. [The real parties'] requested relief seeks to have the Court direct and control CEC governance and operations, including meeting procedures, meeting notice requirements, committee assignments, signatory authority on

4

accounts, the submission or withdrawal of precinct chair rosters, and access to internal party records.

6. CEC meetings are held to conduct CEC business, including discussion and votes by members on internal party matters. CEC meetings routinely involve member communications, deliberations, and collective decision-making regarding party operations and political activity.

7. A meeting of the CEC was scheduled for August 7, 2025. Notice of the meeting was provided by the Party through customary channels used by the CEC for meeting notice, including electronic communications and distribution methods routinely used for CEC matters. The notice stated the date, time, and location of the meeting, and it was intended to provide members a meaningful opportunity to attend.

8. On August 7, 2025, members attended the meeting in person and or remotely. Based on the attendance and sign-in information maintained for that meeting, the meeting proceeded with the participation of members sufficient to conduct the business that was conducted. [T]he meeting involved internal governance matters of the CEC, including committee assignments, organizational functions, and the administration of party operations. Any actions taken were taken in the context of internal party governance and the collective decision-making of CEC participants.

9. Committee assignments and signatory authority are internal administrative functions of the Party and the CEC. Changes to committee assignments are made to organize work and responsibilities. Signatory authority is maintained to protect the integrity of accounts and to ensure that authorized persons can execute banking tasks required for Party operations.

10. The Party maintains and updates precinct chair rosters as part of its internal administration. A roster may be transmitted to third parties, including governmental offices, to reflect the Party's understanding of current precinct chair status at the time of submission based on records and information available to the Party.

11. The Party maintains financial records and reporting information in the ordinary course of its operations. Records include information related to contributions, expenditures, bank account statements, invoices, and communications with vendors or committees. Records are maintained in formats used by the Party for compliance and internal

5

administration. To the extent [the real parties] request court-ordered disclosure or production of records in a particular form or timeframe, that request concerns internal administration and governance, including how the CEC manages its records and approvals.

12. From my review of [the real parties'] Petition, [the real parties] are attempting to use this lawsuit to change who controls CEC operations and how the CEC must conduct its internal business. The dispute is fundamentally about internal party governance and the management of a political association.

13. The actions described in [the real parties'] Petition, including calling meeting, communicating with members, conducting votes, assigning committees, managing signatory authority, and administering precinct chair status and internal records, are part of how CEC members join together to pursue shared political goals and common interests.

14. My actions as Chair were undertaken in good faith and for legitimate party purposes, including ensuring orderly governance, continuity of operations, and the effective administration of Party business.

15. I am also currently running for 2026 Hidalgo County Democratic Chair and believe that the lawsuit is intended to interfere with my election and influence my race for the position. The petition makes allegations attacking my character and accusing me of abusing my legal authority which is furthest from the truth.

16. I submit this affidavit in support of [the] Motion to Dismiss under the [TCPA] and related requests for relief, including the request for a discovery stay and the request for attorneys' fees, costs, and sanctions.

The real parties thereafter filed a "Motion for Specified and Limited Discovery."

They asserted that "the specific and limited depositions" of Gonzales and Giffin "will assist the court in its consideration of" the TCPA motion to dismiss. They informed the trial court that it was allowed to order specified and limited discovery relevant to the motion to dismiss upon a showing of good cause, *see id.* § 27.006(b), and they alleged that:

The purpose of the specified and limited discovery sought by [the real parties] will relate to the following issues: (a) [Gonzales's] alleged

6

communication(s) at issue and the extent, if any, to which those communications occurred within the [TCPA's] definition of the exercise of the right of association, and (b) that the relevant communication(s) were made to an individual with whom [Gonzales] "had joined together to collectively express, promote, pursue of defend *common interests relating to a governmental proceeding or a matter of public concern*."

[Gonzales] has not identified with any specificity what factual circumstances constitute the "communication(s)" he claims were part of his right of association, when these communication(s) took place, and the identity of the person(s) that made up the "association."

(Internal footnote omitted). The real parties asserted that the depositions "will assist the court in its review and determination of the pending motion."

Gonzales and Giffin filed a response and objection to the real parties' motion for discovery. They asserted that the real parties failed to meet their burden to obtain discovery under the TCPA because they had not shown good cause for the discovery and the requested discovery was not relevant to their motion to dismiss. They argued that the real parties' requested discovery regarding "communications" was irrelevant to their motion to dismiss because the current version of the TCPA did not require a showing of "communications" as part of the right of association. They further asserted that depositions were "not necessary to determine whether a lawsuit seeking judicial control of internal party governance 'relates to' the exercise of the right of association under [section] 27.003(a)."

The trial court held a non-evidentiary hearing on the real parties' motion at which the real parties argued that:

The discovery that we are asking for, Your Honor, relates specifically to [Gonzales's] affidavit. We believe that the affidavit is bogus. It's not factually based and does not show the elements of a preponderance of the evidence which they have a burden to show before this case moves forward with respect to that motion.

7

At the hearing, the trial court orally granted the real parties' motion in part by allowing the deposition of Gonzales but not Giffin. On March 17, 2026, the trial court issued an order allowing the real parties to depose Gonzales "on the matters contained in his affidavit dated January 29, 2026."

This original proceeding ensued. Gonzales filed a petition for writ of mandamus and an emergency motion for stay. We granted the emergency motion, ordered his deposition to be stayed, and ordered the real parties to file a response to the petition for writ of mandamus. *See* TEX. R. APP. P. 52.4, 52.8, 52.10. The real parties filed a response asserting generally that the trial court acted within its discretion in ordering the discovery. Gonzales has filed a reply in support of his request for relief. *See id.* R. 52.5.

## II. STANDARD OF REVIEW

A writ of mandamus is an extraordinary remedy available only when the trial court clearly abused its discretion and the party seeking relief lacks an adequate remedy on appeal. *In re Ill. Nat'l Ins.*, 685 S.W.3d 826, 834 (Tex. 2024) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). "A court abuses its discretion if no evidence supports the finding on which its ruling rests and if the court could reasonably have reached only a contrary conclusion." *In re AutoZoners, LLC*, 694 S.W.3d 219, 223 (Tex. 2024) (orig. proceeding) (per curiam). We conduct a "benefits-and-detriments analysis" to determine if the relator possesses an adequate remedy at law. *In re Auburn*

8

*Creek Ltd. P'ship*, 655 S.W.3d 837, 843 (Tex. 2022) (orig. proceeding) (per curiam); *see In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136–37.

We review a trial court's ruling on discovery under the TCPA for abuse of discretion. *Bauta v. Mulvey*, 646 S.W.3d 347, 358 (Tex. App.—Corpus Christi–Edinburg 2022, pet. denied); *Walker v. Schion*, 420 S.W.3d 454, 458 (Tex. App.—Houston [14th Dist.] 2014, no pet.). An order that allows discovery beyond the permissible scope constitutes an abuse of discretion for which mandamus is the proper remedy. *In re State Farm Mut. Auto. Ins.*, 712 S.W.3d 53, 70 (Tex. 2025) (orig. proceeding) (discussing discovery under the Texas Rules of Civil Procedure); *In re SSCP Mgmt., Inc.*, 573 S.W.3d 464, 470 (Tex. App.—Fort Worth 2019, orig. proceeding) (applying this tenet to discovery under the TCPA).

### III.  THE TCPA AND DISCOVERY

The purpose of the TCPA "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002; *see Walgreens v. McKenzie*, 713 S.W.3d 394, 398 (Tex. 2025) (explaining that this "dual purpose" is served by authorizing a motion to dismiss early in the proceedings and expedited review of the ruling on that motion); *D Mag. Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 433–35 (Tex. 2017) (discussing the TCPA's balance between the need for freedom of press and the right to seek redress for injury). When a motion to dismiss is filed under the TCPA, "all discovery in the legal action is suspended until the court has ruled on the motion to dismiss." TEX. CIV. PRAC. & REM. CODE

9

§ 27.003(c). Instead, the trial court determines the motion based on "the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a).

However, section 27.006(b) provides that "[o]n a motion by a party or on the court's own motion and on a showing of good cause, the court may allow specified and limited discovery relevant to the motion." *Id.* § 27.006(b); *see In re SSCP Mgmt., Inc.*, 573 S.W.3d at 470; *see also In re SPEX Grp. US LLC*, No. 05-18-00208-CV, 2018 WL 1312407, at *4 (Tex. App.—Dallas Mar. 14, 2018, orig. proceeding [mand. dism'd]) (mem. op.). We note that, in general, "good cause" requires "a legally sufficient reason." *Good Cause*, BLACK'S LAW DICTIONARY (12th ed. 2024). "Discovery is relevant to a motion to dismiss if it seeks information related to the allegations asserted in the motion" or if "it seeks information to assist the non-movant to meet its burden to present a prima facie case for each element of its claims to defeat the motion to dismiss." *In re SSCP Mgmt., Inc.*, 573 S.W.3d at 471–72; *Norwich v. Jack N. Mousa, Ltd.*, No. 11-19-00339-CV, 2020 WL 2836789, at *6 (Tex. App.—Eastland May 29, 2020, pet. denied) (mem. op.); *Mazaheri v. Tola*, No. 05-18-01367-CV, 2019 WL 3451188, at *5 (Tex. App.—Dallas July 31, 2019, pet. denied) (mem. op.). However, "[t]he [TCPA] does not contemplate extensive discovery." *USA Lending Grp., Inc. v. Winstead PC*, 669 S.W.3d 195, 200 (Tex. 2023).

## IV. ANALYSIS

Gonzales asserts that the trial court clearly abused its discretion by granting the real parties' motion for discovery. He argues that the real parties failed to show good cause for the discovery, and they did not specify why the discovery was needed or how

10

it was limited to the TCPA motion. The real parties contend otherwise and broadly assert that discovery is necessary because the motion to dismiss is deficient. They assert that the motion to dismiss "fail[s] to demonstrate with any clarity how [the real parties'] lawsuit allegedly impinges on Gonzales'[s] constitutional right of association." They further argue that, "No facts are articulated to support the bare pleadings in the motion to dismiss or to connect them to [the real parties'] alleged interference with [Gonzales's] alleged constitutional right of association," and their "motion for discovery expressly noted this deficiency and their good cause for limited and specified discovery."

In examining whether the trial court abused its discretion in allowing discovery under the TCPA, we bear in mind that the TCPA's purpose is to balance protections for a defendant's constitutional rights of speech, petition, and association with a claimant's rights to pursue valid legal claims for demonstrable injuries. *See Ferchichi v. Whataburger Rests. LLC*, 713 S.W.3d 330, 336 (Tex. 2025) (discussing section 27.002 of the TCPA). Thus, "[t]he provisions staying discovery are tempered by provisions permitting discovery upon a showing of good cause." *Combined L. Enf't Ass'n of Tex. v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672, at *10 (Tex. App.—Austin Jan. 31, 2014, pet. denied) (mem. op.). "These provisions can curtail potentially costly discovery in a possibly meritless case, thus serving the TCPA's goal of keeping litigation from being used to chill the exercise of constitutional rights, but can permit discovery upon a showing of good cause." *Id.*[4]

---

[4] "As a general rule, a party may obtain discovery regarding any unprivileged matter that is relevant to the subject matter of the pending action." *In re State Farm Mut. Auto. Ins.*, 712 S.W.3d 53, 67 (Tex. 2025) (orig. proceeding). However, like the TCPA, the Texas Rules of Civil Procedure require a heightened "good cause" standard to obtain discovery when competing interests are involved. For instance, Texas Rule of Civil Procedure 204.1 requires "good cause" to obtain a physical or mental examination of another party.

We conclude that the real parties failed to meet their statutory burden to show good cause for the requested discovery. *See* TEX. CIV. PRAC. & REM. CODE § 27.006(b). The real parties' motion did not state that there was good cause for allowing discovery but instead merely asserted that the discovery would "assist the court" in its "consideration" or "review and determination" of the motion to dismiss. At the hearing, the real parties did not argue that there was good cause for discovery; rather, they argued that they should be allowed to conduct discovery because they "believe[d] that [Gonzales's] affidavit is bogus," "not factually based[,] and does not show the elements . . . which [relators] have a burden to show before this case moves forward with respect to that motion." These arguments do not meet the statutory requirement for the movant to show "good cause" for allowing the discovery. *See id.*; *Mazaheri*, 2019 WL 3451188, at *5 (concluding good cause for discovery was not shown where the movant "did not explain in his motion, or to the trial court at the hearing on his motion, how particularly the information he sought was relevant to defending against [the] motion to dismiss"); *In re D.C.*, No. 05-13-00944-CV, 2013 WL 4041507, at *1 (Tex. App.—Dallas Aug. 9, 2013, orig. proceeding) (mem. op.) (concluding the movant failed to show good cause when he "stated no good cause for the

---

TEX. R. CIV. P. 204.1(c). "The purpose of Rule 204.1's good-cause requirement is to balance the movant's right to a fair trial and the other party's right to privacy." *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 303 (Tex. 2016) (orig. proceeding) (per curiam). To establish good cause to obtain an examination under Texas Rule of Civil Procedure 204.1(c), "the movant must show that (1) the examination is relevant to the issue in controversy and is likely to lead to relevant evidence, (2) there is a 'reasonable nexus between the examination and the condition in controversy,' and (3) the desired information 'cannot be obtained by less intrusive means.'" *In re Sherwin-Williams Co.*, 668 S.W.3d 368, 371 (Tex. 2023) (orig. proceeding) (per curiam). Similarly, Texas Rule of Civil Procedure 196.7 requires good cause to obtain an order for entry on a nonparty's property, and "the trial court must balance the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection." *In re Sun City Gun Exch., Inc.*, 545 S.W.3d 1, 7 (Tex. App.—El Paso 2017, orig. proceeding). In these circumstances, "good cause" is shown if the movant's defense will be compromised by the denial of discovery. *In re SWEPI L.P.*, 103 S.W.3d 578, 587 (Tex. App.—San Antonio 2003, orig. proceeding).

12

discovery" in his motion and merely argued at the hearing "he needed to have limited depositions of the defendants in order to defend the motion to dismiss").

Moreover, the real parties sought discovery regarding Gonzales's "alleged communication(s)" and "the extent, if any, to which those communications occurred within the [TCPA's] definition of the exercise of the right of association," because Gonzales "has not identified with any specificity what factual circumstances constitute the 'communication(s)' he claims were part of his right of association, when these communication(s) took place, and the identity of the person(s) that made up the 'association.'" Gonzales and Giffin asserted that the real parties' discovery request was legally misplaced because it relied on the 2011 version of the TCPA rather than the amended 2019 version. The 2011 version of the TCPA defined "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." *See* Act of May 24, 2011, 82d Leg., R.S., ch. 341 (H.B. 2973), § 2, 2011 Tex. Gen. Laws 961, 961–62. However, the Legislature amended this definition in 2019, and the applicable version of the TCPA now defines the right of association as "to join together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern." Act of May 20, 2019, 86th Leg., R.S., ch. 378, § 1, 2019 Tex. Gen. Laws 684, 684 (codified at TEX. CIV. PRAC. & REM. CODE § 27.001(2)); *see McLane Champions, LLC v. Hous. Baseball Partners LLC*, 671 S.W.3d 907, 919 (Tex. 2023) (discussing the amendment). Thus, the 2019 version of the TCPA does not require Gonzales and Giffin to identify a discrete "communication" in order to invoke the right of association. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(2); *Perales v. Newman*, No. 02-23-00095-CV, 2023 WL

5615893, at *18 (Tex. App.—Fort Worth Aug. 31, 2023, pet. denied) (mem. op.). Accordingly, the real parties' request for discovery regarding Gonzales's "communications" was not apt under the current version of the TCPA.

Finally, we note that the trial court's order allows the real parties to depose Gonzales "on the matters contained in his affidavit." As shown herein, Gonzales's affidavit is lengthy and encompasses numerous topics regarding the CEC, its practices and procedures, factual matters regarding the August 7, 2025 meeting, the CEC's financial records, and the election for 2026 Hidalgo County Democratic Chair, including Gonzales's belief that the real parties' lawsuit was intended to interfere with that election. As such, the trial court's order fails to meet the TCPA's requirement for allowable discovery to be "specified and limited." *See* TEX. CIV. PRAC. & REM. CODE § 27.006(b); *In re SPEX Grp. US LLC*, 2018 WL 1312407, at *5 (concluding that the trial court abused its discretion in ordering discovery under the TCPA where the scope of discovery was not properly limited).

Based on the foregoing, we conclude that the trial court abused its discretion by ordering discovery that is not authorized by the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.006(b); *In re SSCP Mgmt., Inc.*, 573 S.W.3d at 470; *In re SPEX Grp. US LLC*, 2018 WL 1312407, at *4. Further, Gonzales lacks an adequate remedy by appeal to address this error. *See In re SSCP Mgmt., Inc.*, 573 S.W.3d at 470; *In re SPEX Grp. US LLC*, 2018 WL 1312407, at *4. We sustain the sole issue presented in this original proceeding.

## V. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the real parties' response, the reply, and the applicable law, is of the opinion that

14

Gonzales has met his burden to obtain mandamus relief. Accordingly, we lift the stay previously imposed in this case. *See* Tᴇx. R. Aᴘᴘ. P. 52.10. We conditionally grant the petition for writ of mandamus. We direct the trial court to vacate its March 17, 2026 order regarding discovery and to proceed in accordance with our memorandum opinion. Our writ will issue only if the trial court fails to promptly comply.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
19th day of May, 2026.